GEORGE THEIS, Jr., Appellant, v. E. A. WOOD.

Division One, December 23, 1911.

1. **PROMISSORY NOTE: Made in Kansas: Limitations.** Where the note sued on was a contract made in Kansas, to be paid in Kansas, and the transactions relied on by the plaintiff holder to take the note out of the operation of the Kansas five-year Statute of Limitations occurred in Kansas, the legal effect of those transactions must be adjudged by the laws of Kansas.

2. ———: ———: ———: **Part Payment: Effect as to Joint Non-resident Maker.**   By the law of Kansas a part-payment by one of the joint makers of a note does not arrest the course of the Statute of Limitations as to the other.   A partial payment by one of the joint makers, living in Kansas, without an

acknowledgment or promise in writing of the other residing in Missouri, made after the statute had already run for five years after the last payment, has no effect upon the rights of the maker residing in Missouri, and does not save the bar of limitations as against him. So that where the note made in Kansas, matured March 1, 1889, and the joint maker residing in Kansas made a payment of $5 on February 27, 1894, and on December 16, 1899, another of $42, the last partial payment did not save the note from the bar of the five-year Statute of Limitations as to the other joint maker residing in Missouri.

3. ———: ———: ———:. Absence from State: Suspension of Statute. Since a partial payment by one joint maker of a Kansas note did not have the effect of stopping the running of the Kansas Statute of Limitations as to the other, the absence of such other from Kansas and his continued residence in Missouri for seventeen years after the note matured and before suit was brought, did not have the effect of saving the suit from being barred by the Missouri Statute of Limitations, which began to run in his favor as soon as the note became due. Therefore, the Kansas statute, declaring that the Statute of Limitations does not run in favor of a defendant while he is absent from the State, does not apply.

Appeal from Pettis Circuit Court.—*Hon. Louis Hoffman*, Judge.

AFFIRMED.

*C. C. Lawson* and *R. S. Robertson* for appellant.

(1) The Missouri law governs as to the Statute of Limitations in this case. Gross v. Watts, 206 Mo. 373; Sterling v. Hunt, 10 Mo. App. 596; McMerty v. Morrison, 62 Mo. 140; Lyman v. Campbell, 34 Mo. App. 213; Morgan v. Railroad, 51 Mo. App. 523; O'Beer v. Bank, 33 L. R. A. 384; Thomas v. Clarkson, 6 L. R. A. (N. S.) 658; Flowers v. Foreman, 23 How. 132; Field v. Dickenson, 3 Ark. (3 Pike) 409; Hoggett v. Emerson, 8 Kan. 262. (2) The payment made by Mayse, joint maker with defendant on the note in 1899, was sufficient to stop the Statute of Limitation

from running in favor of Wood, and it would commence running from that date. McClerg v. Howard, 45 Mo. 365; Harris v. O'Deal, 39 Mo. App. 270; Bender v. Markel, 37 Mo. App. 234; Regan v. Williams, 185 Mo. 628; County of Vernon v. Stark, 64 Mo. 408; Merritt v. Day, 38 N. J. L. 32; Burr v. Williams, 20 Ark. 188; Beardsley v. Hall, 36 Conn. 270. (3) By the above cases, we can recover under Missouri law, irrespective of what the Kansas law might be, but even under the Kansas law this note is not barred, but an action thereon can be maintained in Kansas if Wood could be summoned there, and an action can be maintained in Missouri under the Kansas law. Williams v. Railroad, 64 L. R. A. 794; Lane v. Bank, 6 Kan. 74; Hoggett v. Emerson, 8 Kan. 262; Morrell v. Ingle, 23 Kan. 32; Colon v. Lanther, 37 Kan. 431; Anent v. Lowenthal, 52 Kan. 706; Investment Securities Co. v. Bergthold, 60 Kan. 813; Coale v. Campbell, 58 Kan. 480.

*G. W. Barnett* and *J. H. Bothwell* for respondent.

(1) The court did not err in giving a peremptory instruction for the defendant in this case. The admission is that the defendant Wood had resided continuously in Missouri for more than ten years before the bringing of this suit, and for that reason the cause of action was barred under the statutes of Missouri. Sec. 1888, R. S. 1909. (2) In those states where a payment by one joint maker of a note arrests the running of the Statute of Limitations as to the other makers, it is on the theory of virtual agency. Each is the agent of the other for the making of payments. It is a mutual agency created by and growing out of the note itself. Craig v. Callaway Co., 12 Mo. 97; Smith's Admr. v. Irwin, 37 Mo. 174; Lane v. Doty, 4 Barb. (N. Y.) 532; Kallenbach v. Dickinson, 100 Ill. 427; Disborough v. Bedleman, 21 N. J. L. 680. (3) As to

whether the note in this case created each joint maker an agent for the other in the matter of making payments on the note, with power to bind each other by such payments so as to start the running of the Statute of Limitations afresh from that point, depends on what the law of Kansas is and was on that subject. The note is a Kansas contract and the law of Kansas must be read into it. The parties are presumed to know the law and to have contracted with reference to the law of the State where the contract was made and where it was to be performed. Under the laws of Kansas no such implied agency was created by the making of the joint note. Under the laws of Kansas which must govern here, the payment by one joint maker of a note does not stop the running of the Statute of Limitations as to the other joint maker but only as to the party making the payment. Steele v. Souder, 20 Kan. 39. (4) Not only did the note fail to create any agency as to each other for the purpose of making payments such as to toll the statute, but, at the very time the payment was made by Mayse, the effect of that payment must be determined by the law of Kansas where the payment was made, which law in effect declares that such payment does not arrest the Statute of Limitations as to the other joint maker. The making of the payment is governed by the law of Kansas, and not of the forum, because the making of a payment is contractual in its nature. It is the recognition of the debt and is a new promise to pay the balance. The law of the place where the contract is made must govern. Regan v. Williams, 185 Mo. 632; Lane v. Doty, 4 Barb. 532; Disborough v. Bedleman, 20 N. J. L. 277; Kallenbach v. Dickinson, 100 Ill. 427; 25 Cyc., 1368 and 1369; Howard v. Fletcher, 59 N. H. 151; Gillman v. Stevens, 63 N. H. 342; Lacoste v. Benton, 3 L. R. A. 220; Electric Co. v. Palmer, 53 N. W. 1137; Gates v. Tebbetts, 100 Mo. App. 590; Bank v. Salman, 117 Mo. App. 512; Foundry Co. v. Jackson,

128 Mo. 119; Baker v. Stonebraker, 36 Mo. 338; Roberts v. Modern Woodmen, 133 Mo. App. 207. (5) The payment by H. C. Mayse, the joint maker, in the State of Kansas, made December 16, 1899, did not prevent the Statute of Limitations from running against the defendant, Wood, in Missouri. The Statute of Limitations as to such actions in Kansas is five years. Sec. 3811, Statute of Kansas. At the time this payment was made by Mayse, he had made no previous payment since February, 1894; more than five years had elapsed since a payment by Mayse, and at the time of the payment in question relied upon by plaintiffs to toll the statute, the cause of action had been barred by the statute of Kansas as to Mayse. He was under no legal obligation to pay the same. His payment was voluntary. His relation as co-obligor with Wood on the note had been severed by reason of the note being barred as to him. There was no longer any implied agency on his part. They were no longer joint obligors. After the debt had been barred as to him, and he was released, Mayse could not, as agent of Wood, by making a payment, arrest the statute as to Wood, as he was not bound to pay the same, and his action in making the payment affected no one but himself. There must be a community of interest and a common obligation to pay. Payment after severance of the joint liability by one of the joint debtors will not prevent the statute from running as to the other. 25 Cyc., 1386 and 1387; Davis v. Coleman, 7 Ired. (N. C.) 424; Lane v. Doty, 4 Barb. (N. Y.) 530; Disborough Ex'r v. Heirs of Bidleman, 21 N. J. L. 677; Disenborough v. Heirs of Bidleman, 20 N. J. L. 275. One joint maker cannot toll the statute as to the other after the debt is barred. Craig v. Callaway Co., 12 Mo. 97; McClurg v. Howard, 45 Mo. 367; Smith's Admr. v. Irwin, 37 Mo. 169; Block v. Darwan, 51 Mo. 31; Regan v. Williams, 185 Mo. 628. Under a statute of this kind all the persons liable on the joint contract must depart

from the State of Kansas in order to arrest the statute in said State as to the party who departs, as such non-resident party could be sued in Kansas by service of summons on the resident joint maker of the note. Brown v. Delafield, 2 Denio (N. Y.) 447; Ware v. Galveston, 3 U. S. 170; Reybold v. Parker, 6 Houst. (Del.) 544.

VALLIANT, J.—This suit was instituted April 5, 1907, based on a promissory note for $2475.60, dated December 1, 1888, due March 1, 1889. The note was made in Kansas and payable there; it bears on its face interest at the rate of twelve per cent per annum, and was nearly twenty years past due when the suit was begun. The defendant was one of the two joint makers, the other was H. C. Mayse; the payee was H. P. Scrogin, cashier of the State Bank of Ashland, Kansas, the owner of the note. The petition alleges that in 1896 the bank transferred the note to the plaintiff; it also alleges that on February 27, 1894, defendant paid on the note the sum of five dollars, and that on December 16, 1899, the defendants paid on the note the sum of $42, which sums were duly credited on the note, the balance remaining unpaid.

Defendant's answer admitted the execution of the note and denied all other allegations of the petition; it also pleaded the Statute of Limitations, both of Kansas and this State, and other statutes of Kansas. The Kansas statutes referred to in the answer were introduced in evidence by the defendant, and also a decision of the Supreme Court of that State construing one of the statutes pleaded. Those statutes and the decision will be referred to hereinafter.

The testimony on the part of the plaintiff tended to show as follows:

The consideration for the note was money loaned by the bank to the makers, to enable them to buy some town lots they desired to invest in. February 27, 1894,

Mayse paid on the note five dollars, which was duly credited; the note was then held by the bank. The president of the bank testified that he had frequently asked Mayse to pay the note, but the latter always said he was financially unable to do so; seeing the note about to become outlawed, witness told Mayse that he did not intend to let the note become outlawed, and he must make a payment or suit would be brought; then Mayse made the $5 payment. Along in 1892 or 1893 the bank went into liquidation, payed its debts and ceased to do business. At that time the witness and Theis, the plaintiff, owned all the shares of stock in the corporation, and, therefore, after paying the debts, those two divided the remaining assets between them; this note fell to the plaintiff's share, and witness, as president of the bank, indorsed the note to plaintiff. It was then past due.

The $5 payment is indorsed on the back of the note thus: "Paid Feby. 27, 1894, $5.00, by H. C. Mayse." The alleged $42 payment is indorsed thus: "Dec. 16/99 By account $42.00." The plaintiff, Theis, as a witness in his own behalf, testified that he made that indorsement, and when asked to state how the payment was made said: "Mr. Mayse ran a paper there [in Ashland, Kansas] and he did some printing for me, and there was a running account between us, and when we settled it he owed me $42, and I asked him if I could credit it on that note, and he said it would be satisfactory and I did it." This was done in Ashland, Kansas. Afterwards in 1901 or 1902, plaintiff released Mayse from his obligation on the note and then put the note in his hands for collection against defendant Wood, who at that time was, and for many years prior had been, living in Missouri. Mayse was an attorney at law in Kansas, as well as a newspaper proprietor. Theis testified that the consideration paid him by Mayse for the release was one hundred and

fifty or one hundred and seventy-five dollars; it was not paid in money, but in legal services.

Defendant's evidence was to the following effect:

December 8, 1888, defendant Wood (and wife) and Mayse executed a deed to Scrogin, cashier of the bank above mentioned, conveying to him, for the bank, the town lots which were purchased by them with the money borrowed on the note from the bank. The consideration mentioned in the deed was $2300, but no money passed. The real consideration, according to Wood's testimony, was an agreement with Scrogin, the cashier, to the following effect: As Wood was about to leave Kansas to make his home in Missouri he went to Scrogin at the bank and told him that the only thing he had available for the payment of the note was the land the money was spent for; Scrogin proposed that defendant and Mayse (who was assistant cashier) make him a deed to the land "and as I got you into the deal, if you can pay it by the time the note is due all right, and if you can't that will end the matter and we will keep the deed." On cross-examination by plaintiff's attorney defendant testified that the understanding was that if the land should be sold for more than the debt they were to have the surplus; if sold for less before the note was due, the sum was to be credited on the note; if sold after the note was due, they were to be released. So the deed was executed and Wood came to Missouri and has lived here ever since; he never after heard from the bank on the subject. In March, 1901, defendant received a letter from Mayse saying that he had bought the note and saying: "Of course I did not pay anything like the face value for it, as it was outlawed as to me, but not as to you; but I did not want it standing against me, and I do not believe you want it standing against you, when you can buy it for a paltry sum comparatively."

At the time he wrote that letter he was, according to plaintiff's testimony, the attorney for the plaintiff,

holding this note for collection.  Again, in April, 1906, he wrote defendant saying that he had taken up the note to save his own credit and that of defendant, and asking defendant to arrange his part of the note or any part of it, and then stating if defendant would not do anything about it he would go to Sedalia and bring suit, concluding by saying: "If you will pay a reasonable amount I will accept rather than make the trip and bring the action."  The next defendant heard of the matter was from plaintiff's attorney in Sedalia by letter dated February 13, 1907.  Mayse and defendant were not partners, the only joint transaction they ever had was the purchase of those town lots, and the execution of this note.  Defendant left Kansas in December, 1888, came to Missouri, and has resided here ever since.

Defendant read in evidence certain statutes of Kansas, to-wit:  Revised Statutes of Kansas, 1885, sections 3808, 3811, 3813, 3878, of the Code of Procedure; also sections 1194, 1190, 1193 and 4452, Revised Statutes of Kansas of 1901.

As the case in our opinion will turn on the effect of those statutes, their contents will be shown in the opinion later.  In rebuttal the plaintiff introduced a statute of Kansas to the effect that the Statute of Limitations does not run in favor of a defendant while he is absent from the State; also a statute authorizing interest as high as twelve per cent on bonds, notes, etc.  At the close of all the evidence the court instructed the jury that the plaintiff was not entitled to recover and the verdict must be for defendant.  The jury rendered a verdict as directed, and the court rendered judgment accordingly for defendant; from that judgment, after due proceedings, the plaintiff has prosecuted this appeal.

I.  We need not discuss the evidence relating to the agreement under which the deed was made to

Scrogin for the bank, because the plaintiff's testimony on that point was contradicted by the testimony for the defendant, therefore the court could not have taken that into consideration in giving the peremptory instruction for a verdict for defendant. If it had been necessary for the defendant to rely on that agreement as a defense, the question would have been one for the jury. Therefore that defense as pleaded, may for the purpose of this appeal be passed over.

II. Plaintiff relies on the alleged part payments by Mayse to stop the running of the Statute of Limitations.

This note was due March 1, 1889. By the Kansas Statute of Limitations suit on a note is barred five years after its maturity; by that statute suit on this note would have been barred in Kansas March 1, 1894; this suit was begun April 5, 1907, seventeen years after the maturity of the note. Two days before the expiration of the five years life of the note in Kansas, Mayse made a payment of five dollars for the avowed purpose of stopping the running of the statute. That payment as to Mayse at least kept the note alive until February 27, 1899, but at the date of the alleged second payment, December 16, 1899, the renewed life of the note had expired, and it was again barred. Not only is the legal effect as claimed by the plaintiff of that alleged second payment challenged, but the good faith of the transaction is also questioned. Mayse, so far as the evidence shows, was insolvent; although he was living in the same town where the bank was located and where the parties interested resided, yet they had never been able to collect but $5 from him and that was under threat of a suit, and then when more than five years had again passed and there had been a running account between him and the plaintiff which when settled showed a balance in his favor of $42, plaintiff proposed to credit it on the note and

he consented. If Mayse had had $42 in hand and had gone to Theis and paid him the money as a part payment on the note we would have had a different transaction to consider. But under the circumstances and in view of Mayse's financial condition it is hard to say that he and the plaintiff did not have some ulterior motive than a straight honest part payment on a debt. The note was then or soon after placed in his hands for collection as attorney for the plaintiff, and we have seen the letters which in that capacity he wrote to defendant. As he was then the attorney for the plaintiff and the letters were written about the plaintiff's business in his hands, the plaintiff is responsible for them; they show anything but good faith.

The petition in this case states that "the defendant" made the five dollar payment in February, 1889, and that "the defendants" made the $42 payment in December, 1894. The proof does not sustain either of those allegations.

In the petition Mayse and Wood are both named as defendants, but when the case was called for trial plaintiff dismissed as to Mayse, and the suit was prosecuted against Wood alone. There was no evidence that Wood made either of the alleged payments or that either was made with his knowledge or consent. Therefore it is not true as a matter of fact that "the defendant," if that was intended to mean Wood, made the first payment, or that "the defendants," if that was intended to include Wood, made the second payment; and that it was untrue was a matter within the plaintiff's own knowledge. The only excuse therefore that the plaintiff could have had for making those statements was that he considered that a payment by one of the joint makers of the note was, in legal effect, a payment by both. But even in that view the statement was not correct, because by the law of Kansas a part-payment by one of the joint makers of a note does not arrest the course of the Statute of Limita-

tions, and the plaintiff, being a citizen and resident of Kansas and his attorney being a citizen and resident of Kansas, knew that to be so. The Kansas statute on this subject introduced in evidence is: "In any case founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same, shall have been made, an action may be brought in such cases within the period prescribed for the same after such payment, acknowledgment or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby." In Steele v. Souder, 20 Kan. 39, the suit was on a joint promissory note by two makers; one had made a part payment, which it was claimed arrested the statute as to both. Construing this statute, the court said: "So far as acknowledgment and promise are concerned, the language of our statute is clear, and excludes all suspension of the statute except by personal written action. As to payment, the language is not so clear, and may be open to at least two constructions." The court after further discussion of the subject said that the true construction of the statute was that payment, like acknowledgment, keeps the note alive only as to the party paying, saying: "No valid reason exists why payment should be more potent than acknowledgment or promise. Indeed, payment was treated by the courts as simply evidence of acknowledgment. . . . We conclude, then, that payment suspends the running of the statute only as against the party making the payment." This note was a contract made in Kansas, to be paid in Kansas, and the transactions relied on by plaintiff to take the note out of the operation of the Kansas Statute of Limitations occurred in that State and their legal effect is to be adjudged by the law of that State. We hold, therefore, that the alleged payments by Mayse had no effect on the rights of defendant Wood.

III.  Appellant contends that the Statute of Limitations in Kansas has never run in favor of Wood because he has been absent from that State ever since the maturity of the note, and at the trial appellant introduced in evidence a statute of Kansas bearing on that subject.  But there is no such question in this case; no such issue was tendered in the petition.  The theory of the plaintiff's petition is that the note was kept alive by the two alleged payments; that was the only issue bearing on the Statute of Limitations that was tendered in the petition.  On that issue the plaintiff's own evidence showed that he was not entitled to recover.  Appellant cannot take refuge under the law of Missouri in reference to a part payment by one of the joint obligors as affecting the liability of the other, because the legal effect of the part payment is to be determined by the law of the place where it occurred, it is in the nature of a contract.  Business transactions are presumed to be done in view of the law of the place where the transactions take place and with the intention of incurring the consequence imposed by that law.  So the consequence of a part payment made in Kansas is to be determined by the law of Kansas, not by the law of Missouri.

There is a learned discussion in the brief concerning another statute of Kansas invoked by respondent as influencing the statute offered by appellant in reference to the absence of defendant from the State of Kansas, but for the reason above stated we do not deem it necessary to enter that discussion.

Under the issues pleaded and the evidence adduced this note was barred as to defendant Wood by the Statute of Limitations of Kansas when this suit was begun; and the alleged payment by Mayse in Kansas in December, 1899, not having the effect by the law of that State of an acknowledgment of the debt by Wood, or of arresting the Statute of Limitations as to him, it has not that effect in this State, and there-

fore the Missouri Statute of Limitations bars the action as to him.

Even if Wood's absence from Kansas had the effect to suspend the Kansas Statute of Limitations as to him, it would not have the effect to suspend the Missouri statute which began to run in his favor, he being in this State, as soon as the note became due.

The sum of the plaintiff's case is this: He came into court April 5, 1907, with a suit based on a note due March 1, 1889, and, anticipating that a plea of the Statute of Limitations would be interposed, he attempted to avoid that plea by stating in his petition that the note sued on was a Kansas contract and that certain payments had been made on it; those statements were made for purpose of showing that the Statute of Limitations was arrested; but, as we have already seen, neither the facts in the evidence nor the law of Kansas sustain those statements. The plaintiff's action on his own evidence is barred by the Statute of Limitations and the trial court was justified in giving the peremptory instruction for a verdict for defendant. The judgment is affirmed. All concur.