### FIRST NAT. BANK OF PARK RAPIDS v. PRAY.

(Circuit Court of Appeals, Ninth Circuit. April 16, 1923. Rehearing Denied June 4, 1923.)

No. 3854.

1. **Courts ⊚⇒366(1)—Construction of state statute by state court followed.**
   Under Rev. St. § 721 (Comp. St. § 1538), the federal court will follow the latest settled adjudications of the highest tribunal of a state, adopting new views as to the proper construction of a statute of such state.

2. **Limitation of actions ⊚⇒148(4)—Letters of guarantor, acknowledging existence of note, not sufficient to toll statute.**
   Under Code Civ. Proc. Cal. § 360, relating to acknowledgment or new promise, there must be the acknowledgment of a new or continuing contract, lifting the note out of the current where the statute of limitations has been running and giving it a new departure, and letters of a guarantor on a note, merely acknowledging the existence of the note, are not sufficient.

3. **Limitation of actions ⊚⇒148(4)—Letters held not to acknowledge indebtedness, so as to prevent bar of statute.**
   Letters of guarantor to holder of note *held* not to evidence an acknowledgment or new promise, which would prevent the bar of the statute of limitations, under Code Civ. Proc. Cal. §§ 337, 339, 360.

   Hunt, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Second Division of the Northern District of California; William C. Van Fleet, Judge.

Action by the First National Bank of Park Rapids against R. F. Pray upon a promissory note, to recover a balance of $3,506.79 from a guarantor, wherein the answer interposed the defense that the ac-

tion was barred by the statute of limitations. Judgment for defendant, and plaintiff brings error. Affirmed.

Willard P. Smith, of San Francisco, Cal., and Mark K. Woolley, of Minneapolis, Minn., for plaintiff in error.

Albert A. Rosenshine and Goldman, Nye & Surr, all of San Francisco, Cal., for defendant in error.

Before MORROW and HUNT, Circuit Judges, and BEAN, District Judge.

MORROW, Circuit Judge. Plaintiff in error in this action (plaintiff in the court below) is a banking corporation, organized under the laws of the United States, and doing business at Park Rapids, Minn., and seeks to recover from R. F. Pray, a guarantor, on the following promissory note:

"Park Rapids, Minn., March 22, 1915.
"March 22, 1916, after date (without grace), for value received, I promise to pay to the order of the First National Bank of Park Rapids $4,500, four thousand five hundred dollars, with interest at the rate of 8 per cent. per annum, payable annually from date until paid. Payable at the First National Bank, Park Rapids, Minn. All the signers and indorsers hereby severally waive demand, notice of nonpayment, and protest.
                              "The White Stores Company,
                                   "By J. Shere, Pres.  ·
                                   "By R. F. Pray, Secretary."

On the back of the note are the following indorsements:

"For value received, I guarantee the payment of the within note at maturity, or any time thereafter, waiving demand, protest, and notice of protest.
                                        · "J. Shere.
                                         "R. F. Pray.
"Indorsement on principal: Balance due on principal, 5/7/18, 993.21. 3506.79."

The note was due March 22, 1916. This suit was commenced February 24, 1921, or 4 years 11 months and 2 days after the maturity of the note. The White Stores Company became insolvent prior to 1918, and its property was placed in the hands of trustees in insolvency.

Plaintiff alleges that the delay in bringing action was due to the fact that the defendant requested plaintiff not to press payment, that dividends would be received from the trustees to apply on said note, and that an extension would enable defendant to secure the money from other sources. Plaintiff alleges that at the request of defendant the date of maturity was extended to September 19, 1919. On May 15, 1918, a payment of $993.21 was made by the trustee in bankruptcy. Plaintiff alleges that, during the four years prior to the commencement of action, the defendant in writing acknowledged the indebtedness and promised to pay.

Defendant, a citizen of California, denies that he requested plaintiff not to press payment of the note, averring that he was anxious to have plaintiff press payment, though he was not anxious to have plaintiff press payment by him as guarantor; denies that he ever assured plaintiff that dividends would be received from the trustees of the White

---

Stores Company, averring that dividends have, however, accrued in the hands of the trustees to apply on the note; that the amount is unknown to defendant, but is known to plaintiff, and has already been paid to plaintiff, or awaits his acceptance in reduction or extinction of the note. Defendant believes that such accumulations are now sufficient to pay the note, and are ready and available to the plaintiff. Defendant denies that he assured the plaintiff that an extension would enable defendant to secure the money from other sources to apply on the note; denies that any delay of plaintiff in failing to press payment or in bringing action was in compliance with requests from him, or from any person; denies that, within the four years prior to the commencement of action, he, in writing or otherwise, acknowledged the indebtedness and promised to pay it; denies that he requested plaintiff to extend the maturity, or refrain from bringing suit; denies that plaintiff extended the maturity of the note. If it did, such extension was never made known to the defendant.

Defendant pleads the California statute of limitations contained in sections 337 and 339, Code of Civil Procedure, as follows:

Section 337. *Actions That may be Brought within Four Years.* "1. An action upon any contract, obligation or liability *found(ed) upon an instrument in writing.*"

Section 339. *Actions That may be Brought within Two Years.* "1. An action upon a contract, obligation or liability *not founded upon an instrument of writing.* * * *"

Defendant, for a further defense, alleges that the facts set forth are not sufficient to constitute a cause of action.

The parties to the action waived a jury trial. The case was thereupon tried by the court without a jury.

The evidence on the part of the plaintiff consisted of the promissory note for $4,500 in suit and the indorsement thereon of the defendant as one of two separate guarantors. The plaintiff offered in evidence a number of letters, passing between R. F. Pray, the defendant, in California, and the officers of the plaintiff bank in Park Rapids, Minn. There are 17 of these letters—8 signed by the defendant and addressed to officers of the plaintiff bank, and 9 signed by officers of the plaintiff bank and addressed to the defendant. The first letter, dated March 29, 1915, is a letter transmitting two notes, one for $1,500 and the other for $4,500. The latter is the note in suit. The other is not involved in this action.

These letters were written at various times during the period from October 7, 1915, to July 22, 1920. They relate to the note in controversy, and plaintiff contends that these letters, taken together or separately, amount to acknowledgments in writing of defendant's liability of an existing debt, from which the law implies a promise to pay, as against the running of the statute of limitations. The defendant objected to these letters on the ground that they were immaterial, irrelevant, and incompetent, and did not tend to prove a waiver of the statute of limitations, or the question of forbearance. The objection was sustained by the court, and thereupon defendant moved for a nonsuit, which was granted. The plaintiffs are here upon a writ of error.

Section 360 of the California Code of Civil Procedure provides:

"*Acknowledgment or New Promise Must be in Writing.* No acknowledgment or promise is sufficient evidence of a new or continuing contract, by which to take the case out of the operation of this title, [Time of Commencing Action], unless the same is contained in some writing, signed by the party to be charged thereby."

Section 721 of the Revised Statutes (section 1538, Compiled Stats.) provides:

"The laws of the several states, except where the Constitution, treaties, or statutes of United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply."

In Leffingwell v. Warren, 2 Black, 599, 603, 17 L. Ed. 261, the Supreme Court of the United States held that:

"The construction given to a statute of a state by the highest judicial tribunal of such state is regarded as a part of the statute, and is as binding upon the courts of the United States as the text"—citing cases.

The court held further that:

"If the highest judicial tribunal of a state adopt new views as to the proper construction of such a statute, and reverse its former decisions, this court will follow the latest settled adjudications"—citing cases.

[1] Under this statute, as construed by the Supreme Court of the United States, our inquiry is limited to the question: What is the latest construction placed upon section 360 of the California Code of Civil Procedure by the Supreme Court of this state?

In Clunin v. First Federal Trust Co. (Cal. Sup.) 207 Pac. 1009, we find such a late construction, where this question has been fully considered, the cases upon the subject carefully reviewed, and the law upon the subject clearly stated. The action in that case was upon a promissory note for $3,000, dated April 20, 1909. The action to recover was not brought until May 31, 1918. The four-year statute of limitations had expired April 20, 1913, unless the time of the note had been extended in some way.

It was contended by plaintiff that the time had been so extended by certain writings executed by the debtor. These writings consisted of checks, signed by the debtor, payable to the order of plaintiff, together with memoranda made by the drawer of the check on the stubs to which the checks were attached at the time they were made, showing the amount of the check and the purpose for which it was executed. The checks all included in the amount stated a sum which the stubs showed was intended to be quarterly interest on a debt of $3,000 (the principal of the note), but that fact nowhere appeared upon the check itself. None of them was for the exact sum. They all included sums for other purposes. One of these checks bore a date as late as April 14, 1917; consequently, if the transaction operated as an acknowledgment of a new debt, a continuing contract, or a promise, sufficient to take the case out of the operation of the statute of limitations within the meaning of section 360, the action was not barred. Upon this state of facts, the court said:

"The law is well established in this state by numerous decisions that the acknowledgment or promise referred to in section 360 must be in writing, and

that the writing, whether in the form of a promise or not, must contain some reference to an existing debt owing to the creditor, which the debtor is willing to pay. It must of itself acknowledge the debt."

The court, reviewing previous cases, says:

"The first decisions upon the subject, those in Fairbanks v. Dawson, 9 Cal. 89, and Barron v. Kennedy, 17 Cal. 574, showed some uncertainty with respect to the character of the writing by which the acknowledgment should be shown and concerning the effect of the statute then in force, which was substantially the same in language as section 360; but in later cases the law has been crystallized into a clear statement of the rule.

"In McCormick v. Brown, 36 Cal. 185, 95 Am. Dec. 170, where the court was considering the effect of a letter as an acknowledgment of a debt, it was said: 'The acknowledgment referred to in the statute is not such as may be deduced by inference from a promise or an offer to pay a part of the debt, or to pay the whole debt in a particular manner, or at a specified time, or upon specified conditions. The acknowledgment, say the cases, must be a direct, distinct, unqualified, and unconditional admission of the debt which the party is liable and willing to pay.' * * *

"Several decisions contain language apparently indicating that an acknowledgment made by an act or by conduct, although not in writing, may be sufficient to take the case out of the operation of the statute. The context, however, in each case shows that the act or conduct which the court was referring to was a writing which contained an acknowledgment of the debt sufficient to come within the rule stated in the foregoing decisions. Such expressions are found in Fairbanks v. Dawson, supra, Tuggle v. Minor, 76 Cal. 101, 18 Pac. 131, and in Minifie v. Rowley (Cal. Sup.) 202 Pac. on page 675.

"It is clear from all these decisions that no writing is sufficient as an acknowledgment under section 360, unless it contains some reference to a debt, which, either of itself or with the aid of permissible evidence of extrinsic facts in explanation, amounts to an admission that there is a debt existing to the creditor to whom the writing is sent which the debtor is liable to pay and willing to pay. The checks introduced in evidence do not come up to this standard, since they contain no reference whatever to any debt, or any language which can be said to be uncertain in its meaning and subject to explanation by the aid of extrinsic circumstances, so as to be made to refer to a debt."

[2] In the present case, we are dealing with letters only. Do they, either singly or as a whole, acknowledge or promise a new or continuing contract? It may be conceded that they do acknowledge the existence of the note in suit, upon which the defendant was a guarantor. But is that sufficient? Must there not be the acknowledgment of a new or continuing contract as the statute provides, lifting the note out of the current where the statute of limitations has been running, and giving it a new departure?

In Clunin v. First Federal Trust Co., supra, there was an acknowledgment of the note by the payment of interest on the debt, of which the note was evidence. This acknowledgment was repeated with every check drawn in payment of interest down to April 13, 1913, when the statute of four years limitation had run on the note. From April 13, 1913, to April 14, 1917, the debtor continued to pay the quarterly interest on the note as before. Was not that an acknowledgment that the life of the note had been extended, and that he was paying interest upon a new contract, or the old one that had been extended by acknowledgment? The Supreme Court said "No," holding that the acknowledgment referred to in the statute must be a direct, distinct, unqualified, and unconditional admission of the debt which the party

is liable and willing to pay, and that there was no such admission in the checks drawn in payment of interest. That law we must follow in this case.

[3] What is the evidence of such an acknowledgment or admission in the letters in the present case? Defendant's letter of March 29, 1915, inclosed to the plaintiff the note in suit. The plaintiff's letter of February 21, 1916, notified the defendant that the plaintiff had not been able to get any interest out of Shere (defendant's coguarantor). Plaintiff also notified the defendant that the note would be due March 22d, and he would be very glad to have it taken up. Defendant's letter of May 23, 1916, was in reply to one of plaintiff's, dated May 18th, not in the record. The letter referred to a transaction relating to a mortgage not involved in this case. He says:

"It we could get the mortgage adjusted, as suggested, and claim filed for $6,000, instead of $4,500, it would make the amount to be made up very considerable less than now appears."

It is said this is a reference to the proceedings in bankruptcy of the White Stores Company, which did pay a dividend of $993.21 on May 15, 1918, indorsed on the note.

In plaintiff's letter of June 1, 1916, the defendant is urged to provide for the payment of the note, plaintiff stating that the loan was made on the strength of defendant's indorsement; that plaintiff was looking to defendant for payment, and would appreciate it very much if defendant would arrange to take the loan up, as it was due, and the bank, of course, ought to have the money. If defendant could not take it all up at that time, it was suggested that he pay what he could and the bank could take a new note from defendant, bearing interest at the rate of 6 per cent. (the existing note bore interest at 8 per cent.), and the bank would hold the White Stores notes as collateral security to defendant's note. To this letter defendant made no reply, and never gave any new notes or made any new promise to pay the note.

In the letter of plaintiff's president of November 19, 1918, he says he always feels that it is unnecessary to make expense if it can be avoided. He accordingly makes this proposition to defendant to send the bank one-half of the balance of the note, without taking into consideration the interest, amounting to $1,753.40, and the president of the bank will cancel defendant's name from the back of the note, which will entirely release him. The president of the bank feels that this is more than meeting the defendant half way, and trusts that he will receive a remittance as above stated by return mail. This offer was to hold good only during the month of November. The president would be willing to take Liberty Bonds, if the defendant should prefer.

Defendant replied November 26, 1918, in which he said by same mail he also had a letter from the new trustee of the White Stores Company in regard to final hearing, and he had written his attorneys, Courtney & Courtney, for a little further information. He should hear from them in a few days and would then communicate with the bank. In plaintiff's letter of December 2, 1918, he says he has just received defendant's letter of November 26th, and, as stated in his former letter, he will be glad to have defendant give it due considera-

tion at as early a date as possible and advise plaintiff, and give the bank defendant's final answer between then and the 15th of the month (December). On December 11, 1918, defendant wrote further:

"Referring to your recent correspondence in regard to the White Stores notes, I have just to-day received a letter from Courtney & Courtney, attorneys at Duluth, saying that there was in the hands of trustee considerable amount for distribution to the creditors of that company, and the distribution would soon be made. When this is done, I should be very glad to hear from you again. Please understand I do not wish to stall this matter off, but believe it is only proper to apply the distribution which you receive on these notes before making settlement."

The plaintiff, on December 16, 1918, wrote to the defendant as follows:

"If you care to make remittance as per my former letter at this time, I will do this: I will agree to give you one-half of any further amounts that we receive from trustee. I should think this would be quite satisfactory to you."

Plaintiff's attorney, on July 31, 1919, wrote the defendant that he is instructed to advise the defendant that, to clean this matter up, the bank will accept the face of the note and will return to the defendant all dividends that they received in connection with the receivership. In the event that defendant does not see fit to accept this proposition, the bank has instructed the attorney to sue on the note. This, he says, would be distasteful to the bank, as well as to him, and he trusts such course will not be necessary. In reply to this letter, the defendant, on August 8, 1919, repeats the substance of previous correspondence to the president of the bank and says:

"Would you not kindly ascertain Mr. Shere's address and take the matter up with him direct, and see if you cannot get half of the amount that Mr. Taber offered to settle for,"

and the defendant would send the other half and get it out of the way.

On August 29, 1919, the plaintiff's attorney replied to the defendant's letter, saying that he had received a letter from Shere, in which he advised that he could do nothing. The president of the bank advised the attorney that he would not settle on the basis proposed November 29th, but insisted upon a settlement in the immediate future, or they would insist upon an action being started to recover the total amount due, with interest.

On September 19, 1919, defendant wrote plaintiff that he had been trying to get Shere to pay his half of the remaining portion of the note due the bank, but without any success whatever, and inasmuch as the bank insisted upon its legal right to sue the indorsers of the note, for which he does not blame them, he suggests that they go ahead and sue either Mr. Shere or himself, or jointly, and ascertain what the outcome would be.

On September 29, 1919, plaintiff's attorney wrote defendant, in case he should be able to secure a note from Mr. Shere running to the plaintiff for one-half of the amount due, would he, in that case, adjust this matter with the bank? To this letter defendant replied October 4, 1919, that he would not be satisfied to pay half the note with the understanding that Mr. Shere would give his note for the balance, as

he waś afraid Mr. Shere would not be in a position to pay the note when it became due. He says, further, he thought the attorney for the bank was proceeding to put this matter in court, so he referred the matter to his attorney in California, and defendant thinks it will be satisfactory, in order to determine just what his liability is, to have suit brought on the note.

On March 22, 1920, the statute of limitations of four years had run on the note. On June 26, 1920, plaintiff's attorney submitted to the defendant another proposition from the president of the bank, that the bank would accept from the defendant, and give him a release from all further liability upon the payment of the sum of $2,500, and pay the defendant one-half of any amount that might be realized from dividends which would be paid from the trusteeship of the White Stores Company. On July 22, 1920, defendant replied to this last letter, saying that he had consulted with his attorneys, and they had advised him to let the matter go to suit, as in that way his legal rights would be fully protected in the matter. He thinks possibly best for all concerned would be to let the matter go to trial.

Was there, in any of these letters, either before or after the running of the statute of limitations on the note on March 22, 1920, any acknowledgment or admission on the part of the defendant that there was a new promise or continuing contract which took the case out of the operation of the statute? Or, to state the question in the language of the Supreme Court of the state, in Clunin v. First Federal Trust Company, was there, in any of these letters, any "direct, distinct, unqualified, and unconditional admission of the debt which the debtor [defendant] is liable to pay and willing to pay?" The answers to these two questions are now easily given.

The correspondence refers to dividends from the bankrupt estate of the White Stores Company, the payment on the note of $993.21 being evidence of the payment of one such dividend, and the letters furnishing evidence that others were expected which might discharge the entire debt of the White Stores Company on the note, leaving nothing for the guarantors to pay. There was no unqualified and unconditional admission of any debt in any sum, and there is not a particle of evidence that there was any principal or intermediate sum or balance, with or without interest, which the defendant alone was liable and willing to pay.

Plaintiff contends that defendant's letters of November 26, 1918, and December 11, 1918, are such acknowledgments, because they refer to the note and do not repudiate the debt. Plaintiff contends that the letters are either an acknowledgment or a repudiation of the debt; that there can be no middle ground. But the statute, as construed by the Supreme Court of the state, following a decision of the Supreme Court of the United States by Mr. Justice Story in Bell v. Morrison, 1 Pet. 351, 362, 7 L. Ed. 174, requires an acknowledgment of the liability to pay and a willingness to pay. In the latter case, the Supreme Court of the United States, speaking through Mr. Justice Story, said:

"If there be no express promise, but a promise is to be raised by implication of law from the acknowledgment of the party, such acknowledgment ought to contain an unqualified and direct admission of a previous, subsisting debt,

which the party is liable and willing to pay. If there be accompanying circumstances, which repel the presumption of a promise or intention to pay; if the expressions be equivocal, vague, and indeterminate, leading to no certain conclusions, but at best to probable inferences, which may affect different minds in different ways—we think they ought not to go to a jury as evidence of a new promise to revive the cause of action. Any other course would open all the mischiefs against which the statute was intended to guard innocent persons, and expose them to the dangers of being entrapped in careless conversations, and betrayed by perjuries."

We think the correspondence relating to the application of the dividends from the bankrupt estate of the principal on the note, and the absence of any direct, unqualified, and unconditional acknowledgment or promise to pay the finally ascertained balance, if any, answers all plaintiff's contentions. It was said, further, in Bell v. Morrison, supra, that:

"Nice refinements, for the purpose of evading the statute, * * * must be disregarded."

Further discussion of the detail of this correspondence seems unnecessary. The motion for nonsuit was properly granted.

Judgment for the defendant was correct, and is affirmed.

HUNT, Circuit Judge (dissenting). I dissent, upon the ground that by the several letters written to the plaintiff in error while the debt was existing, especially the letters written on November 26 and December 11, 1918, defendant in error acknowledged the indebtedness and treated it as a subsisting one, thus taking the debt out of the operation of the statute of limitations. Minifie v. Rowley, 187 Cal. 481, 202 Pac. 673.