## VAN DYKE v. PARKER.
### No. 7879.

Circuit Court of Appeals, Ninth Circuit.
April 6, 1936.

HANEY, Circuit Judge, dissenting.

———◆———

Charles L. Rawlins, Geo. H. Rawlins, and Thomas W. Nealon, all of Phœnix, Ariz., for appellant.

George R. Darnell, Samuel L. Pattee, and Lawrence V. Robertson, all of Tucson, Ariz., for appellee.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

On January 21, 1931, the appellee filed a complaint against the appellant and Hoval A. Smith, based upon two promissory notes executed by them at Chicago, Ill., on October 30, 1917, in favor of the appellee. Each note was for $5,000, one becoming due on December 30, 1918, and the other on June 30, 1919. The complaint purported to state a separate cause of action on each note.

The defendants filed a demurrer, setting up that the complaint did not state sufficient facts to constitute a cause of action, and pleading the four-year statute of limitations of Arizona, section 2061, Revised Code of Arizona 1928, since the instruments sued upon were executed outside of Arizona. The demurrer was sustained.

On August 26, 1931, the appellee filed a second amended complaint, containing the same allegations as the original complaint, but adding to the first cause of action, the following: "That thereafter, and on or about the 1st day of January, 1927, the defendant, Cleve W. Van Dyke, acknowledged the justness of the claim of the plaintiff upon said promissory note in a writing signed by him." The appellee set forth in haec verba the instrument that he relied upon to toll the statute of limitations, the document being a copy of a letter dated January 1, 1927, addressed to Smith. The appellee's pleadings also averred that the notes referred to in the letter from the appellant to Smith were the notes upon which the complaint was based. It was also alleged that each of the defendants was outside the limits of Arizona for many months in 1927, 1928, and 1930. In this connection, it should be stated that the court found that between January 1, 1927, and the time of the commencement of the instant suit, the appellant was absent from Arizona for different periods aggregating more than six months. In his brief, the appellee recognizes the fact that those absences would be material only if it were found that the letter of January 1, 1927, was sufficient to toll the statute of limitations.

As part of the second cause of action of the appellee's second amended complaint, the text of the letter of January 1, 1927, and the allegations regarding it, were adopted by reference.

The appellant and his codefendant Smith demurred to the second amended complaint, and the demurrer was sustained as to Smith and overruled as to the appellant. An

amended answer, setting up, among other defenses, the same Arizona statute of limitations, was filed by the appellant. To this answer the appellee filed a reply.

Trial by jury having been waived in writing, the case was tried to the court. At the close of the appellee's case, the appellant moved for judgment in his favor on the ground that there was no evidence to sustain a judgment for the appellee, and renewed his motion at the close of all the evidence. Both motions were denied.

The court below made special findings of fact and conclusions of law, and entered a judgment in favor of the appellee, from which judgment the present appeal is taken.

Viewed in a light most favorable to the appellee, the evidence adduced at the trial was briefly as follows:

The appellee sold his stock in the Calhoun Timber Company, of Calhoun county, Fla., and took in part payment therefor three notes of $5,000 each, signed by the appellant and Smith. One of the notes was paid and other two were not, except that two payments of $500 each were made upon each of the notes. About January 1, 1927, the appellee called on the appellant at the latter's office in Miami, Ariz., in an effort to obtain payment of the two notes. The appellant thereupon called in his secretary and dictated a letter addressed to Smith at Washington, D. C. The purported signature of the appellant was typewritten at the end of that instrument, and a carbon copy of the letter, which the appellee contends was a "duplicate original," was handed to the appellee by the appellant.

The appellant's letter to Smith is the center of controversy in the instant case. Since it is of considerable length, we can here give only a summary.

After specifically referring to the notes in question, in his letter the appellant gives his version of their history and of the transactions between himself and the St. Ansgar Bank, and also transactions with R. C. Lubiens of St. Ansgar, who was interested in the Calhoun Timber Company with the appellant. He states he "was under the impression that Mr. Lubiens and the bank, having been notified by" the appellant that it was their obligation, "had assumed these notes and that they were still held by them and was part of the consideration upon which our settlement was based." The "settlement" referred to was one reached between the makers of the notes and the St.

Ansgar Bank, "with the understanding that all notes and obligations were to be included within this settlement."

Adverting to his prior refusal to pay the notes, the appellant wrote: "The notes were returned to the St. Ansgar Bank from the Gila Valley Bank of Miami, the bank to whom they were sent for collection. The refusal was based upon the grounds that I did not owe the money, that the stock had been turned over to Mr. Lubiens and that he owed the money for the amount due, as I had paid my share in full."

Continuing, the appellant writes:

"What was my surprise to learn the other day upon the arrival of Mr. Parker that the bank, instead of including these notes in our settlement as I presumed was being done, had returned the notes to Mr. Parker unpaid. And now Mr. Parker has presented these notes to me for payment.

"Now, Hoval, I have tried to be patient in this matter, I have tried to be fair; I have assumed more than my share of the obligation of this disastrous enterprise. I have carried the loan for you; I have carried the loan for the bank and had paid out practically all the cash money which has been paid out since the final crash of the company. * * *

"I presumed the bank was trying to adjust this thing fairly and on a basis of equity and trying to clear up a nasty mess. When Mr. Parker arrived I explained to him fully what my relationship to the bank was on these matters. I told him that we now have due and payable a note to them of $10,000. He has notified me that we must not make this payment to the bank until his matter is adjusted.

"I am writing you to inform you of the situation. I request now that you feel obligated to Mr. Parker to fulfill my statement to him that we will not pay this note to the Bank of St. Ansgar until the matter is adjusted, in other words I request that you, upon your return to Arizona, stop at St. Ansgar, see Mr. Salisbury and present this matter to him. Mr. Parker would have levied upon this payment that we were about to make to the Bank of St. Ansgar had I not stipulated to him as stated above. I suggest that you now have a definite understanding with Mr. Salisbury in reference to this matter. I expect them to treat Mr. Parker as fairly as I have treated them. Our agreement with Mr. Parker was definite. Our arrangement among ourselves was well understood and Mr. Parker is only

asking for his rights and what is legitimate. The fact of the matter is I am very much surprised indeed at the action taken by the bank in this matter, especially after the settlement that has been made between them and us."

The appellant's letter to Smith was not mailed. Instead, a telegram was sent to Smith by the appellant, asking the former to meet the appellee in Chicago.

In April, 1927, a few months after the letter to Smith had been written, the appellant and the appellee met in Los Angeles, Cal., and discussed the matter of payment of the two notes. That conversation led to the appellant's paying $1,000 on each note.

Later the notes were sent to Graham Foster, an attorney of Globe, Ariz., who subsequently brought suit upon them. The notes were in Mr. Foster's possession when the suit was commenced, and were copied into both the original and amended pleadings. After the suit had been instituted, Mr. Foster died, and the original notes were lost.

The appellee testified that he borrowed money on the notes in question, that he subsequently received them back from the bank and that he afterward kept them until he sent them to Mr. Foster, through his attorney, Mr. Proctor.

Although the sufficiency of the showing as to the loss of the notes, and legal effect of the typewritten name of the appellant at the end of the letter of January 1, 1927, are argued at some length in the briefs, for the purpose of this opinion it is being assumed that the appellee has made a proper showing regarding the lost notes, and that the appellant in fact adopted the typewritten signature appended to the letter to Smith.

After thus clearing away these preliminary questions, we find ourselves in complete agreement with the appellee's statement of the issues in this case: "The questions as we see them are simply these: Is the instrument of January 1st, 1927, sufficient to toll the statute of limitations, whether of Arizona or of Iowa? To our minds that is the one question in the case and everything else is merged in or involved in that one question. If Exhibit 4 is sufficient to toll whatever statute of limitations is applicable, the judgment was properly rendered for the plaintiff; if not, it should have been rendered for the defendant."

It is well established that in determining the period of limitations applicable to actions at law, the federal courts are governed by local statutes as interpreted by the highest courts of the respective States. Bell v. Morrison, 1 Pet. (26 U.S.) 351, 359, 360, 363, 7 L.Ed. 174; Graham v. Englemann, (D.C.) 263 F. 166, 168. See, also, Palmer v. Texas, 212 U.S. 118, 131, 29 S.Ct. 230, 53 L.Ed. 435.

The present case, however, is complicated by the fact that the notes in question might be affected, in various ways, by the statutes and decisions of three states. The notes were executed in Illinois. They were payable in Iowa. Suit was brought in Arizona, the locus fori. The question, then, resolves itself into what statute of limitations should be applied.

While the appellee concedes that the law of the forum governs matters of limitation "to some extent," he insists that such law controls "the mere *time* in which the action is to be brought," but that statutes dealing with part payment, acknowledgment of the debt, or new promise, "are a part of the substantive law which entered into the contract and govern the rights of the parties to it no matter where the suit may be brought."

The question is important because if, as the appellee contends, the law of Iowa governs the sufficiency of the letter of January, 1927, that document is arguably adequate to toll the statute of limitations of that state. If, on the other hand, the law of Arizona applies, the appellant's letter to Smith is not sufficient to toll the statute of limitations of Arizona.

We cannot agree with the appellee in his effort to restrict the application of the lex fori to the "mere time" in which the suit is to be brought.

The general rule is thus stated in Scudder v. Union National Bank, 91 U.S. 406, 412, 413, 23 L.Ed. 245: "Matters bearing upon the execution, the interpretation, and the validity of a contract are determined by the law of the place where the contract is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. *Matters respecting the remedy, such as* the bringing of suits, admissibility of evidence, *statutes of limitation, depend upon the law of the place where the suit is brought.*" (Italics our own.)

In Nickel v. Vogel, 76 Kan. 625, 92 P. 1105, 1109, the court said: "The general rule that the statute of limitations in force

where an action is pending will control that case has no exceptions other than may be found in the law of such place."

Again, in 37 C.J. 729, § 46, we find the following language: "Statutes of limitations are generally considered as municipal regulations founded on local policy, which have no coercive authority abroad, and with which foreign jurisdictions have no concern, and hence the general rule is that in respect to the limitation of actions the law of the forum governs, *as well in matters of exception from the bar fixed by the statute as in matters of the actual bar itself,* and notwithstanding the legislation or the judicial construction thereof is different from that prevailing in other jursdictions." (Italics our own.) See, also, Graham v. Englemann, supra, 263 F. 166, at page 167; 12 C.J. 447, § 27.

■ Assuredly, there is nothing in the general and sweeping language of the foregoing authorities to suggest that the statute of limitations of the forum applies only to the "mere time" of the bar. On the contrary, it is made clear that the rule is without exception, save as contained in the lex fori itself; and that "matters" of limitation, including "matters of exception"—such as the effect of a purported acknowledgment—are governed by the law of the state where the court sits.

It is therefore necessary to examine the Arizona statute of limitations, as construed by the Supreme Court of that state.

Section 2061 of the 1928 Revised Code of Arizona reads in part as follows: "There shall be commenced and prosecuted within four years after the cause of action shall have accrued, and not afterward, the following actions: * * * 3. upon a judgment or decree of any court rendered without this state, or upon an instrument in writing executed without this state."

Secton 2068 of the same compilation provides: "When an action is barred by limitation, no acknowledgment of the justness of the claim made subsequent to the time it became due shall be admitted in evidence to take the case out of the operation of the law, unless such acknowledgment be in writing and signed by the party to be charged thereby."

Construing section 2068, the Supreme Court of Arizona, in Steinfeld v. Marteny, 40 Ariz. 116, 123, 124, 10 P.(2d) 367, 370, used the following language:

"The above section of our statute (section 2068) was taken from Texas. Work v. United Globe Mines, 12 Ariz. 339, 100 P. 813.

They are practically the same in wording and mean exactly the same thing. Article 5705, Vernon's Sayles' Tex.Civ.Stat.1914 (vol. 4). In Coles v. Kelsey, 2 Tex. 541, 47 Am.Dec. 661, it was said:

"'That there must be an acknowledgment of the debt existing, and an expression of a willingness to pay it; both must concur; an acknowledgment of the debt is not sufficient; but there must be an expression of a willingness to pay.'

"This seems to be the rule in other jurisdictions. Warren v. Cleveland, 111 Tenn. 174, 76 S.W. 910, 102 Am.St.Rep. 749, and note g, subd. 2, at page 766; 17 R.C.L. 900, § 258.

"It would seem that these two things would have to concur in order to meet the requirement of the statute that the acknowledgment should be 'of the justness of the claim.'"

While conceding that this court is bound by the construction placed upon an Arizona statute by the highest court of that state, the appellee seeks to minimize the effect of the Steinfeld Case by contending that the question of whether or not an effective acknowledgment must express the debtor's willingness to pay, "was never reached in the consideration of the case." The appellee argues that in the Steinfeld Case the evidence fell short "of even presenting a question of fact as to the written agreement of extension, and when the instrument relied upon as an acknowledgment of the justness of the debt made no reference to the particular debt sued on," but consisted of "mere general expressions of indebtedness, the case was ended."

We cannot agree with the appellee as to the effect of the Steinfeld Case. It is true that the Supreme Court of Arizona held that the debtor had not "admitted the justness of each and every item of such indebtedness or a willingness to pay the whole thereof." But it is clear that the state court bottomed its decision on *both* facts; namely, that the claimed acknowledgment of the justness of the particular note sued on was "too general and loose," *and* that the debtor failed to admit a willingness to pay the note. That the court had both elements in mind is clearly shown by the following language: "In listing his debts for that purpose [to obtain credit] it could hardly be said that he [the debtor] admitted the justness of each and every item of such indebtedness or a willingness to pay the whole thereof. If Marteny may be said to have included the note in the item of $38,410 which he admitted

owing the loan company, *he did not thereby admit a willingness to pay the same."* (Italics our own.)

Thus it may be seen that the court of Arizona not only "reached" the question now confronting us, but *decided* it; that is to say, it plainly held that two things must concur before an acknowledgment can toll the statute of limitations: An admission that the claim is just, and the expression of a willingness to pay it.

The mere fact that either of two grounds upon which a court bases its decision might alone be sufficient to sustain the tribunal's conclusions does not make the other ground obiter dictum, if the court elects to rely upon *both.* The reason for this is obvious. Who is to say which was the controlling reason, and which the obiter dictum? Each of the supporting pillars of the opinion is entitled to equal weight.

In Florida C. R. Co. v. Schutte, 103 U.S. 118, 143, 26 L.Ed. 327, Mr. Chief Justice Waite said: "As to the first question, we deem it sufficient to say that the Supreme Court of Florida has distinctly decided that in the case of this company, as well as the other, the statutory authority was complete. The point was directly made by the pleadings and as directly passed on by the court. Although the bill in the case was finally dismissed because it was not proved that any of the State bonds had been sold, the decision was in no just sense dictum. It cannot be said that a case is not authority on one point because, although that point was properly presented and decided in the regular course of the consideration of the cause, something else was found in the end which disposed of the whole matter. Here the precise question was properly presented, fully argued, and elaborately considered in the opinion. The decision on this question was as much a part of the judgment of the court as was that on any other of the several matters on which the case as a whole depended."

In Union Pacific R. Co. v. Mason City & Ft. D. R. Co., 199 U.S. 160, 166, 26 S.Ct. 19, 20, 50 L.Ed. 134, the court used the following language: "Of course, where there are two grounds, upon either of which the judgment of the trial court can be rested, and the appellate court sustains both, the ruling on neither is obiter, but each is the judgment of the court, and of equal validity with the other. Whenever a question fairly arises in the course of a trial, and there is a distinct decision of that question, the ruling of the court in respect thereto can, in

no just sense, be called mere dictum. [Case cited.]" See, also, United States v. Chamberlin, 219 U.S. 250, 262, 31 S.Ct. 155, 55 L.Ed. 204; United States v. Title Ins. Co., 265 U.S. 472, 486, 44 S.Ct. 621, 68 L.Ed. 1110; New York Cent. & H. R. R. Co. v. Price (C.C.A. 1) 159 F. 330, 332, 16 L.R.A. (N.S.) 1103.

In the Steinfeld Case, the Supreme Court of Arizona followed the decision in Coles v. Kelsey, 2 Tex. 541, 542, 558, 47 Am.Dec. 661, which held that "an acknowledgment of the debt is not sufficient; but there must be an expression of a willingness to pay." Referring to later decisions by Texas courts, the appellee in his brief contends that such decisions hold that willingness to pay "is implied from the acknowledgment of the debt itself." The appellee adds: "We venture the prediction that when the case comes squarely before the Supreme Court of the State of Arizona it will follow these late Texas decisions as to what is an expression of willingness to pay and from what language it may be inferred."

The appellee's prediction has not been borne out by the event. On February 3, 1936, in the case of Moore v. Diamond Dry Goods Company, 54 P.(2d) 553, the Supreme Court of Arizona again handed down a decision construing section 2068, and again it followed Coles v. Kelsey and ignored the later Texas decisions. In this recent decision, the Supreme Court of Arizona said:

"Section 2068, Id., provides that when an action is barred by limitation no acknowledgment of its justness, unless in writing and signed by the party to be charged, made subsequent to the time it became due, shall be admitted in evidence to take the case out of the operation of the law. We take it that the converse of this rule of evidence is that an acknowledgment of the justness of a debt or demand after it becomes due, when signed by the party to be charged, takes the debt or demand out of the operation of the law of limitations.

"The writing here relied upon as taking the debt out of the bar is contained in a letter written to plaintiff by defendant at Gustine, Cal., on January 22, 1928, in answer to a letter from plaintiff to defendant, in which he said, after acknowledging receipt of plaintiff's letter asking for remittance on account:

"'* * * sorry to inform you I can not pay this bill I owe the Boston Store at this time. * * * I owe the bill and the first money I have to pay, all or any part,

I will see that Diamond Bros. gets it. Hoping I will be able to do something before long,' etc.

"This letter is a very clear, distinct, and unequivocal acknowledgment, in unambiguous language, of the justness of plaintiff's demand and a promise to pay it, and certainly had the effect of taking it out of the operation of the law of limitations. In other words, it restored to plaintiff the rights it had lost, enabling it to maintain an action thereon. On this new promise the statute commenced to run from the time it was made, for plaintiff could have sued thereon immediately after it was made. * * *

"As above stated, the action is upon the new promise as contained in the letter of January 22d. Where a debtor, after his debt is barred, agrees to pay it notwithstanding and reduces such agreement to writing, it is such promise that gives the promisee the right to commence and prosecute an action to recover the debt. *In other words, his action is upon the new promise,* the barred debt being the consideration therefor. This is the rule in most of the states. Coles v. Kelsey, 2 Tex. 541, 47 Am.Dec. 661; 37 C.J. 1140, § 620. *The written acknowledgment is the only competent evidence admissible to take the case out of the operation of the law. Section 2068,* supra." (Italics our own.)

Obviously, if, under section 2068, the purported acknowledgment "is the only competent evidence admissible to take the case out of the operation of the law," when that acknowledgment fails to contain an "expression of a willingness to pay," there is no new promise upon which the holder of the note can sue. And, under Coles v. Kelsey and Steinfeld v. Marteny, both an acknowledgment of justness and a willingness to pay must concur in order that the statute of limitations may be tolled.

It may be argued that the acknowledgment and not the old contract constitutes the cause of action, only in cases where the acknowledgment contains an express promise, as it did in the Moore Case, supra. So to construe that decision, however, is to disregard the authority of the Steinfeld Case, which was not disturbed and criticized in the Moore Case, and also the ruling in Coles v. Kelsey, which the Supreme Court has repeatedly followed. In the Steinfeld and the Coles Cases, it is made clear that both an admission of the debt and a willingness to pay must be disclosed in the acknowledgment; and the Coles and the Moore Cases make it plain that the acknowledgment constitutes the cause of action. In the Coles Case, supra, 2 Tex. 541, at page 551, 47 Am. Dec. 661, the court said: "It would seem that if the suit had to be supported on the acknowledgment, that it would follow, that the acknowledgment was the cause of action, whether made before or after the bar had been completed."

Nor does the holding of the Supreme Court of Arizona in the Steinfeld Case conflict with general law. There is respectable authority for the proposition that, in order to toll the statute of limitations, the acknowledgment should admit a debt that the person to be charged is *willing to pay.* The "willingness to pay" may be express or implied; but it cannot be spelled out from a mere acknowledgment of "justness," without more.

In Moore v. Bank of Columbia, 6 Pet. (31 U.S.) 86, 93, 8 L.Ed. 329, the court said: "If there be no express promise, but a promise is to be raised by implication of law, from the acknowledgment of the party, such acknowledgment ought to contain an unqualified and direct admission of a previous subsisting debt, which the party is liable and willing to pay."

Again, in Shepherd v. Thompson, 122 U. S. 231, 235, 7 S.Ct. 1229, 1231, 30 L.Ed. 1156, the court thus phrased the rule: "But in order to continue or to revive the cause of action, after it would otherwise have been barred by the statute, there must be either an express promise of the debtor to pay that debt, or else an express acknowledgment of the debt, from which his promise to pay it may be inferred. A mere acknowledgment, though in writing, of the debt as having once existed, is not sufficient to raise an implication of such a new promise. To have this effect, there must be a distinct and unequivocal acknowledgment of the debt as still subsisting as a personal obligation of the debtor."

Section 360 of the Code of Civil Procedure of California reads as follows: "No acknowledgment or promise is sufficient evidence of a new or continuing contract, by which to take the case out of the operation of this title, unless the same is contained in some writing, signed by the party to be charged thereby."

In First Nat. Bank v. Pray, 288 F. 675, 682, this court reviewed the California decisions construing the foregoing section, and reached the following conclusion: "But the statute, as construed by the Supreme Court

of the state, following a decision of the Supreme Court of the United States by Mr. Justice Story in Bell v. Morrison, 1 Pet. 351, 362, 7 L.Ed. 174, requires an acknowledgment of the liability to pay and a willingness to pay."

The rule is thus stated in Shurter v. Ricker (C.C.A. 5) 62 F.(2d) 489, 492, certiorari denied 289 U.S. 732, 53 S.Ct. 593, 77 L. Ed. 1481: "The general rule is that such an acknowledgment should contain an unqualified and direct admission of a previous debt and express a willingness to pay it." See, also, Wood & Selick v. Compagnie Generale Transatlantique (C.C.A.2) 43 F.(2d) 941, 943; Clunin v. First Federal Trust Co., 189 Cal. 248, 253, 254, 207 P. 1009.

 Applying the foregoing authorities to the case at bar, we find that the appellant's letter of January 1, 1927, does not contain "a distinct and unequivocal acknowledgment of the debt as still subsisting as a personal obligation of the debtor." While it is true that the appellant stated that "Mr. Parker is only asking for his rights and what is legitimate," this does not mean that the appellant "distinctly" and "unequivocally" promised to pay the appellee. The appellant was saying that the appellee should be paid—*but not by the appellant.* The very purpose of the letter was to urge Smith, the comaker, to see to it that the bank should "treat Mr. Parker as fairly as I have treated them." Indeed, the appellant plainly indicates that he should *not* be made to pay the debt—not as a matter of caprice, but of *justice.* He writes: "Now, Hoval, I have tried to be patient in this matter, I have tried to be fair; I have assumed more than my share of the obligation of this disastrous enterprise."

Considering the letter in its entirety, it seems to us to be far from a promise, express or implied, to pay *anything.* It is the very negation of such a promise; it is an attempt to bring about payment by the St. Ansgar bank, "after the settlement that has been made between them and us."

Accordingly, we hold that the learned judge below was in error in concluding that the letter of January 1, 1927, was "a sufficient memorandum in writing" "to arrest the running of the statute of limitations and to start the period of limitation to running anew under the law of the State of Arizona."

Judgment reversed.

HANEY, Circuit Judge (dissenting).

I am unable to agree with either the reasoning or the conclusion expressed in the majority opinion with respect to the application of the Arizona statute of limitations to the facts in this case, and because I think that the law of Iowa is determinative as to the time when the causes of action accrued,[1] and with respect to the effect of partial payments,[2] I dissent.

[1] Scudder v. Union National Bank, 91 U.S. 406, 23 L.Ed. 245; Glenn v. Liggett, 135 U.S. 533, 10 S.Ct. 867, 34 L.Ed. 262; Gassaway v. Hopkins, 38 Tenn. (1 Head) 583; Crofoot v. Thatcher, 19 Utah, 212, 57 P. 171, 75 Am.St.Rep. 725; Sterrett v. Sweeney, 15 Idaho, 416, 98 P. 418, 20 L.R.A.(N.S.) 963, 128 Am. St.Rep. 68.

[2] Sterrett v. Sweeney, supra; Theis v. Wood, 238 Mo. 643, 142 S.W. 431. Compare: Obear v. First Nat. Bank, 97 Ga. 587, 25 S.E. 335, 33 L.R.A. 284; Tilliard v. Hall, 11 Tex.Civ.App. 381, 32 S.W. 863.