# DIBBLE *v.* BELLINGHAM BAY LAND COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.

No. 230.   Argued April 17, 1896. — Decided May 4, 1896.

In a suit in a state court to quiet title, two claims to title were set up by the plaintiff. The first was that his title had been acquired by adverse possession, sufficient under the local law. On this point the trial court found that, in 1862, the plaintiff's grantor entered into possession of the land in question, and that he and the plaintiff had since been continuously and then were in actual, notorious and adverse possession thereof, under color and claim of title. The second claim was under a deed from husband and wife, executed by the former under an alleged power of attorney from the latter which had been lost without having been

recorded. On this point the trial court found that the existence and validity of the power of attorney was established. It entered a decree that the plaintiff was entitled to the possession of the land, that the defendant was not the owner of it, that the cloud be removed, and that the power of attorney be established. On appeal to the Supreme Court of the State this decree was affirmed. The case being brought here by writ of error the Chief Justice of the Supreme Court of the State certified that the question had been duly raised in the trial court whether the said power and the deed made under it, which, by the law at the time of its making were absolutely void, were made valid by the territorial act of February 2, 1888, and whether, if so made valid, it was not in violation of the Fourteenth Amendment to the Constitution. *Held*, that, as it was settled in the State that actual, uninterrupted and notorious possession, under claim of right, was sufficient without color of title, and that a void deed, accompanied with actual occupancy, was sufficient to set the statute of limitations in motion, the judgment could be sustained on the first point, which raised no Federal question, and that consequently this court was without jurisdiction.

If the record discloses that a question has been raised and decided adversely to a party claiming the benefit of a provision of the Constitution of the United States, and another question not Federal has also been raised and decided against such party, and the decision of the latter question is sufficient notwithstanding the Federal question to sustain the decision, this court will not review the judgment.

If it appears that the court did in fact base its judgment on such independent ground, or, where it does not appear on which of the two grounds the judgment was based, if the independent ground on which it might have been based was a good and valid one, sufficient in itself to sustain the judgment, this court will not assume jurisdiction.

This result cannot be in any respect controlled by the certificate of the presiding judge, for the office of the certificate, as it respects the Federal question, is to make more certain and specific what is too general and indefinite in the record, but it is incompetent to originate the question.

If the conflict of a state law with the Constitution and the decision by the state court in favor of its validity are relied on, this must appear on the face of the record before the decision can be reëxamined in this court, and this is equally true where the denial of a title, right, privilege or immunity under the Constitution and laws of the United States, or the validity of an authority exercised under the United States, is urged as the ground of jurisdiction.

No rule is more firmly established than that this court will follow the construction given by the Supreme Court of a State to a statute of limitations of a State, and there is no reason for disregarding it in this instance.

THIS was a complaint filed by the Bellingham Bay Land Company against Carmi Dibble in the Superior Court of

Whatcom County, Washington, on June 7, 1891, seeking a decree quieting plaintiff's title to certain lands therein described, and establishing the existence and validity of a certain power of attorney alleged to have been lost without having been recorded. Defendant disclaimed as to the west half of the property in question, and, after demurrer overruled to an amended complaint, answered by way of denial and assertion of defendant's claim set out in the complaint, and also by way of cross-complaint. A trial was had on issues joined and the Superior Court filed findings of fact and conclusions of law.

The court found that plaintiff was a corporation duly organized and existing under the laws of the State of Washington, with full powers to purchase, own and sell real estate; that on or prior to March 28, 1862, Thomas Jones and Betsy Jones, his wife, were the owners of a certain donation land claim situated in the county of Whatcom and Territory of Washington, as particularly described; that these lands were donated to Thomas Jones and his wife, under the donation laws of the United States, and that by virtue of the division which was made of them by the surveyor general, and by the certificate and patent, the west half of the lands was donated to Thomas Jones and the east half to Betsy Jones, his wife. The court further found that on March 28, 1862, for a valuable consideration paid therefor, Thomas Jones for himself and as attorney in fact for his wife, executed good and sufficient deeds of conveyance for all the tract of land to Edward Eldridge, and that since that date Eldridge had duly conveyed the premises to plaintiff, a small parcel excepted; that prior to the execution of the deed by Jones for himself and his wife, Betsy Jones had duly executed and delivered her power of attorney to Thomas, authorizing him to sell and convey the lands; that the power of attorney was executed under the seal of said Betsy, and was duly acknowledged and witnessed and properly certified, but that the same was not placed on the records of the county, but became and still remained lost, and at the date of the execution of the deed had not been revoked. The court then described the parcel conveyed by Eldridge to other parties than plaintiff.

The court further found that "on the said 28th day of March, 1862, the said Eldridge entered into possession of all of the said donation claim of Thomas Jones and Betsy Jones, and that from that date to the present time the said Edward Eldridge and his grantees, including the plaintiff in this case, have been continuously and now are in the actual, open, notorious, and adverse possession of all of the said property, under claim and color of title, excepting only the small parcels hereinbefore referred to as having been conveyed to other persons by the said Edward Eldridge; "that neither the defendant nor his grantors, ancestors or predecessors had been seized or possessed of the said premises or any part or parcel thereof at any time since the said 28th day of March, 1862, and that the defendant is not now in possession of the said land;" that defendant claimed to be the owner of the premises, and to have procured deeds for the land from persons claiming to be the heirs of Betsy Jones, and had caused these deeds to be recorded in Whatcom County, and had created a cloud upon plaintiff's title; that there was not sufficient evidence to establish the fact that Betsy Jones died intestate, or that the persons under whom defendant claimed, Lovatt and others, were the heirs at law of Betsy Jones; that at the time when defendant claimed to have purchased the property from these alleged heirs he had full notice and knowledge of the conveyance previously made by Thomas Jones for himself and his wife, and that he had notice of the existence of the power of attorney under which Jones conveyed as attorney in fact for his wife, and had notice that plaintiff was in possession of the premises, claiming to be the owner under the Jones' deed; and "that it and its immediate grantors had been in the possession of the said premises for more than ten years last past."

The Superior Court found as conclusions of law that plaintiff was entitled to the relief prayed, (including, among other things, the establishment of "the existence and validity of the said power of attorney,") and entered a decree that plaintiff was the owner and in possession and entitled to the possession of the land in question excepting the enumerated

parcel; that defendant was not the owner of the premises or any part or parcel thereof; and that the cloud created upon the title of the property by the deeds to defendant from Lovatt and others be removed, and plaintiff's title be quieted against all claims of defendant; and " that the said power of attorney from the said Betsy Jones to Thomas Jones, her husband, be and the same is hereby established;" and for costs.

The cause was then taken on appeal to the Supreme Court of the State and the decree below affirmed. 4 Wash. 764. Of the four judges of the Supreme Court who participated in the decision, all concurred in the judgment, and three, including the Chief Justice, in the opinion. Thereafter the Chief Justice signed a certificate and this writ of error was brought.

*Mr. Alfred L. Black,* (with whom was *Mr. E. B. Leaming* on the brief,) for plaintiff in error.

*Mr. J. A. Kerr,* (with whom was *Mr. W. Lair Hill* on the brief,) for defendant in error.

Mr. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

By section two of article XXVII of the constitution of the State, all laws in force in the Territory of Washington not repugnant to that constitution were continued in force until they expired by their own limitation or were altered or repealed by the legislature.

By section five of the territorial act of February 2, 1888, brought forward as section 1447 of the General Statutes, (1 Hill's Statutes and Codes, 506,) it was provided that all powers of attorney theretofore made and executed by any married woman joined with her husband and duly acknowledged and certified, and all powers of attorney theretofore made or executed by husband or wife to the other, authorizing the sale or other disposition of real estate duly acknowl-

edged, and all conveyances theretofore and thereafter executed under and by virtue of such powers of attorney and acknowledged and certified as provided, should be valid and binding, but no rights vested in third persons should be affected by anything in the section contained.

Plaintiff in error contends that the validity of that section was drawn in question as repugnant to the Fourteenth Article of Amendment to the Constitution, and its validity sustained in that the Supreme Court of the State held that the power of attorney and deed executed under it were thereby validated.

The certificate of the Chief Justice of that court was to the effect that in the trial by the court below and on the hearing on appeal, "the following question was duly and regularly raised, to wit: Whether the power of attorney alleged to exist and to have been made by Betsy Jones to her husband, Thomas Jones, prior to the 28th day of March, A.D. 1862, and a deed executed under it to Edward Eldridge on the 28th day of March, 1862, which said power of attorney and deed, on the respective dates of the execution thereof, were absolutely void, were made valid and effective by the retrospective portion of section 1447 of volume one of Hill's Code of this State;" and that the section thus applied was in violation of the Fourteenth Amendment; and further that the Supreme Court "did not express any written opinion on the question so raised as aforesaid, except such as is necessarily involved by the decree of this court in the above entitled action, dated on the seventeenth day of September, A.D. 1892, and affirming the whole of the decree of the Superior Court of Whatcom County, State of Washington, in the above entitled action, entered and filed in the office of the clerk of the said Superior Court on the 20th day of February, A.D. 1892; and such opinion as is expressed by the statement of this court in its written opinion in the above entitled action, that the color of title necessary to support a claim by adverse possession in respondent, the Bellingham Bay Land Company, rests and depends solely upon a warranty deed from the owner, Betsy Jones, executed by her husband, Thomas Jones, by virtue of

the power of attorney urged and alleged by respondent to have been made valid by the retrospective part of the said code section; which said statement, as set forth in the opinion of this court, is an integral and necessary part of the decision by this court rendered in affirming the said decree of the lower court."

In respect of the Supreme Court, it is provided by section 5 of the Code of Procedure of Washington that: "In the determination of causes, all decisions of the court shall be in writing, and the grounds of the decision shall be stated;" and by sections 68 and 73 it is made the duty of its clerk to record its proceedings and enter its orders, judgments and decrees. And the thirteenth rule of the court provides that "all opinions of the court shall be recorded by the clerk in a well bound volume, and the original filed with the papers in the case." 2 Washington, 689.

It is the settled course of decision that this court may examine opinions so delivered and recorded to ascertain the ground of the judgment of the state court. *Kreiger* v. *Shelby Railroad Co.*, 125 U. S. 39, 44.

If the record discloses that a question has been raised and decided adversely to a party claiming the benefit of a provision of the Constitution of the United States, and another question not Federal has also been raised and decided against such party, and the decision of the latter question is sufficient notwithstanding the Federal question to sustain the decision, this court will not review the judgment. *Eustis* v. *Bolles*, 150 U. S. 361, 366.

If it appears that the court did in fact base its judgment on such independent ground, or, where it does not appear on which of the two grounds the judgment was based, if the independent ground on which it might have been based was a good and valid one, sufficient in itself to sustain the judgment, this court will not assume jurisdiction. *Klinger* v. *Missouri*, 13 Wall. 257.

Nor can this result be in any respect controlled by the certificate of the presiding judge, for the office of the certificate, as it respects the Federal question, is to make more certain

and specific what is too general and indefinite in the record, but it is incompetent to originate the question. *Parmelee* v. *Lawrence*, 11 Wall. 36; *Powell* v. *Brunswick County*, 150 U. S. 433.

If the conflict of a state law with the Constitution and the decision by the state court in favor of its validity are relied on, this must appear on the face of the record before the decision can be reëxamined in this court, and this is equally true where the denial of a title, right, privilege or immunity under the Constitution and laws of the United States, or the validity of an authority exercised under the United States, is urged as the ground of jurisdiction.

In its opinion the Supreme Court of Washington, after stating the case, said: "The proof of two facts was attempted by the respondent, the establishment of either of which would be fatal to appellant's claim. The facts attempted to be proven were as follows: (1) That plaintiff's title to the land in controversy had been acquired by adverse possession; (2) that Betsy Jones had executed a power of attorney to her husband, Thomas Jones, authorizing him to sell the disputed premises." Thereupon, after overruling a contention by the appellant that under the pleadings as framed no testimony tending to prove adverse holding was admissible, the court took up the first proposition, and held that plaintiff had established his title by adverse possession during the statutory period; that the adverse possession was actual, notorious, exclusive and continuous, under claim or color of title; that Eldridge entered into possession under the highest claim of title, to wit, a warranty deed from the owners, and on the day he received the deed, which was recorded the next day, took actual possession of the land, and maintained it for over twenty-nine years before the commencement of the action or any assertion of defendant's claim; and that defendant had knowledge of Eldridge's reputed ownership prior to his acquisition of the rights of the alleged heirs. Having reached this result, the court added: "This renders an investigation of the second proposition discussed unnecessary." Thus it appears that the decision of the court rested on a ground that

did not involve the question of the validity of the power of attorney and deed. As the record disclosed this ground of defence, and as the opinion put the decision solely on that ground, it would be quite inadmissible to allow a certificate of the presiding judge to overthrow that conclusion. This certificate does not have that effect, and we cannot believe that any such result was intended. It was evidently drawn by counsel, as was indeed admitted at the bar, and states that a Federal question was duly raised, but the Chief Justice declined to say that it was decided except as such decision might be involved in the affirmance of the whole of the decree of the Superior Court, or by the statement of the court in the opinion that "the color of title necessary to support a claim of adverse possession" depended on the deed of Betsy Jones executed by her husband by virtue of the power of attorney.

Although the Superior Court found as a conclusion of law that plaintiff was entitled "to have the existence and validity of the said power of attorney from Betsy Jones established by decree of the court," yet the terms of the decree in that regard simply established the power of attorney, which might well enough be held to mean the establishment of its existence, it having been lost and not recorded, and not of its validity; but if a broader signification be attributed, still the affirmance of the decree, which adjudicated that plaintiff was the owner and that defendant was not, and quieted the title of plaintiff, did not amount to a decision of the alleged question, as the legal efficacy of the power of attorney as a muniment of title became immaterial in view of the ground on which the decision of the Supreme Court was placed.

Nor was the question of the validity of the act of February 2, 1888, necessarily disposed of by anything stated in the opinion. The judgment proceeded on claim of title as well as color of title. The court held that Eldridge entered into and maintained actual possession under claim of title, and it seems to be settled in Washington that "actual, uninterrupted and notorious possession, under claim of right, is sufficient without color of title." *Moore* v. *Brownfield,* 7 Wash. 23.

In *Probst* v. *Presbyterian Church,* 129 U. S. 182, this court

held that it was not necessary that the holder by adverse possession should have a paper title under which he claimed, if he asserted ownership of the land and this assertion was accompanied by an uninterrupted possession. *Ewing* v. *Burnet*, 11 Pet. 41, and *Harvey* v. *Tyler*, 2 Wall. 328, were cited, and it was said: "The fair implication in both these cases is that where possession is taken under claim of title, it sufficiently shows the intention of the party to hold adversely within the meaning of the law upon that subject. There is no case to be found which holds that this adverse claim of title must be found in some written instrument." In this case the Superior Court found that Eldridge and his grantees had been nearly thirty years. "continuously and now are in the actual, open, notorious and adverse possession of all of the said property under claim and color of title," and this finding was reiterated by the Supreme Court.

"The intention guides the entry and fixes its character," said the court in *Ewing* v. *Burnet*, and the state courts had no difficulty as to Eldridge's intention in making the entry. Clearly it was within the province of those courts to determine what constituted a sufficient claim of ownership to set the statute in motion. Eldridge entered with the intention of asserting and did assert ownership, and it was for the state courts to say what the effect of that adverse possession was, whether the Jones deed was void or voidable.

Moreover, as to color of title, it is held in Washington that a void deed, accompanied with actual occupancy, is sufficient to set the statute in motion. *Ward* v. *Higgins*, 7 Wash. 617, 624.

This is the usual rule as to general statutes of limitations, though as to short statutes in relation to sales of real estate for taxes a different view has been expressed. *Pillow* v. *Roberts*, 13 How. 472; *Hall* v. *Law*, 102 U. S. 461, 466; *Redfield* v. *Parks*, 132 U. S. 239; *Hurd* v. *Brisner*, 3 Wash. 1. Prior to December 1, 1881, the limitation of actions for the recovery of real property or the possession thereof was twenty years, and this by the territorial act of that date was reduced to ten years. The general statute of limitations was relied on

here and there was an adverse possession for nearly thirty years.

No rule is more firmly established than that this court will follow the construction given by the Supreme Court of a State to a statute of limitations of a State, *Bausermann* v. *Blunt*, 147 U. S. 647, and we perceive no reason for disregarding it in this instance.

We are of opinion that jurisdiction cannot be maintained on the ground that the validity of the act of February 2, 1888, being section 1447 of the General Laws of Washington, was drawn in question and its validity sustained.

It is urged that jurisdiction may be sustained on two other grounds, namely, that a right claimed under the Constitution and laws of the United States, or the validity of an authority exercised under the United States, by virtue of the patent issued for these lands, was denied by the decision; and that the validity of the territorial act of December 1, 1881, being section 26 of the Code of 1881, now section 112 of the state Code of Procedure, (2 Hill, 37,) was drawn in question as contrary to the Constitution, and its validity sustained.

We are unable to discover that Federal questions in these particulars were raised or disposed of by the decision.

The contention seems to be that the patent for this land was not issued until September 6, 1871; that the statute of limitations did not begin to run until that date; that as the action was commenced June 9, 1891, a period of less than twenty years elapsed between these two dates, and that the decision of the Supreme Court, if rested on twenty years' adverse possession, held that the bar commenced at a date anterior to that of the patent and in that way denied rights claimed under it ; and if rested on ten years, gave a retrospective effect to the act of December 1, 1881, as ten years had not elapsed between that date and the commencement of the action.

There does not seem to have been any controversy as to the effect of the issue of the patent. The Superior Court in its findings simply referred to the fact that by the certificate and the patent the west half of the land was donated to Thomas

and the east half to Betsey Jones, and found nothing as to when the patent issued; and the Supreme Court made no reference to the matter.

If resort be had to the evidence, it appears therefrom that the patent issued September 6, 1871, and that the right to the patent matured prior to 1862 when Mrs. Jones left the Territory. The execution and delivery of the patent after the right to it had become complete were the mere ministerial acts of the officers charged with that duty. *Barney* v. *Dolph*, 97 U. S. 652; *Simmons* v. *Wagner*, 101 U. S. 260. The state courts could properly hold under the circumstances of this case that the statute of limitations was set in motion when that right accrued, and was not postponed to the issue of the patent.

Eldridge did not occupy the position of a stranger to the title, not connected therewith by transfer from the original holder. If the Jones deed was sufficient to sustain claim or color of title if the patent had issued March 28, 1862, its sufficiency for that purpose could not be rendered any the less by the issue of the patent at a subsequent time, and, in any view of the alleged infirmities of the deed, the patent would take effect by relation rather than operate extrinsically to the destruction of the claim under the original owners.

The judgment of the Supreme Court was based on twenty years' adverse possession. We presume as § 760 of the Code of 1881 provided that no right accrued before the code took effect should be affected by its provisions, the court was of opinion that the act of December 1, 1881, could not be availed of to lengthen the time originally prescribed. At all events it was for the state court to determine the applicable bar, *Murray* v. *Gibson*, 15 How. 421, and we cannot take jurisdiction to review its judgment.

*Writ of error dismissed.*