**CULVER et al. v. BELL & LOFFLAND, Inc.**

No. 10786.

Circuit Court of Appeals, Ninth Circuit.

Dec. 5, 1944.

Rehearing Denied Jan. 2, 1945.

---

H. W. Funke, of Long Beach, Cal., and Albert E. Coger, of Los Angeles, Cal., for appellants.

Finlayson, Bennett & Morrow and James S. Bennett, all of Los Angeles, Cal., for appellee.

Douglas B. Maggs, Sol., Bessie Margolin, Asst. Sol., George M. Szabad and Harry M. Leet, Attys., U. S. Dept. of Labor, all of Washington, D. C., and Dorothy M. Williams, Regional Atty., of San Francisco, Cal., for administrator of Wage and Hour Division, United States Dept. of Labor, amicus curiae.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

On April 29, 1942 appellants commenced suit to recover overtime wages and liquidated damages as provided in § 16 of the Fair Labor Standards Act, 29 U.S.C.A. § 216. The court, for reasons shortly to appear, limited recovery to overtime only, restricted the overtime recovery to certain activities, and denied in toto the claims of other employees sought to be recovered by appellants in a representative capacity.

Appellee has for many years been engaged in the drilling of oil wells in California under contracts with producing companies. After October 27, 1940 it paid overtime to its employees in conformity with the Act but had not done so prior to that date. By their pleading appellants have restricted their claims to those accruing in the period commencing April 30, 1939, that is within three years of filing suit. They say the applicable statute of limitations is § 338 of the California Code of Civil Procedure, which prescribes a three year limitation in actions "upon a liability created by statute, other than a penalty or forfeiture."

1. Section 16(b) of the Act so far as pertinent, provides that an employer who violates the maximum hours provision shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages; and that "action to recover such liability may be maintained * * * by any one or more employees for and in behalf of himself or themselves and other employees similarly situated * * *."

In the complaint as originally filed appellants, after describing the nature of their claims, alleged that "this action is brought for and in behalf of themselves, and other employees similarly situated." The other employees were not named in the pleading. On July 14, 1942, counsel for appellants, apparently upon request and before answer had been filed, furnished appellee with the names of 38 other employees said to be similarly situated. Thereafter they attempted to amend their complaint so as to include the names of these employees. A specific written authorization to sue, inaccurately termed an "assignment," was obtained from each of the 38, and these authorizations were incorporated in the amendments proposed to be made.

The court declined to permit the amendments, holding that "new demands" were thereby presented as to each of the 38. These new demands, it was thought, would not relate back to the time of the filing of the original complaint, hence the situation of the 38 was not similar to that of the three named plaintiffs in respect of the calculation of the period of limitations. Because of this supposed lack of similarity in situation the claims of the 38 were excluded from the case.

██ . We think the ruling was error. The original complaint gave notice that the suit was being maintained not only on behalf of the named complainants, but on behalf of fellow employees similarly situated. The employer, if in doubt who these were, was entitled to move under Rule 12 (e) of the Federal Rules, 28 U.S.C.A. following section 723c, for a more specific statement or for a bill of particulars. The provisions of the Act permitting resort to representative suits should be liberally administered by the courts, since encouragement of the practice will redound to the advantage of employer and employee alike through avoidance of a multiplicity of suits.

██ Rule 15(c) of the Federal Rules provides that whenever the claim asserted in an amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." While the complaint was inexpertly drawn, at least the clear intention was manifested of including other employees in the benefits of the suit. We see no good reason for believing that the proposed curative amendments did not relate back. Cf. Michelsen v. Penney, 2 Cir., 135 F.2d 409, 416–417. The amendments should have been permitted and the complainants allowed to proceed on behalf of all employees named. We desire not to be understood as here intimating that a mere difference in the time of accrual of claims spells a dissimilarity of situation.

2. Having excluded all claims except those of the three named plaintiffs, the court proceeded, in practical effect, to confine the three to the recovery of overtime only; this on the theory that the "additional equal amount" allowed by the Act, though denominated liquidated damages, is in reality a penalty. In respect of these additional amounts the court therefore applied § 340 of the California Code of Civil Procedure, which provides a one year limitation for the commencement of "an action upon a statute for a penalty or forfeiture, when the action is given to an individual , * * *."

██ We think the additional recovery permitted is not in the nature of a penalty. Congress called the amount "liquidated damages", and its terminology is entitled at least to some weight. The Sixth Circuit, in its decision in Robertson v. Argus Hosiery Mills, 121 F.2d 285, gave controlling weight to the legislative designation.

In the leading case of Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123, the Court laid down certain rules or tests for determining whether a law is penal or remedial. The following excerpts from 146 U.S. pages 667–668, 13 S.Ct. page 227 of the opinion are helpful: "Statutes giving a private action against the wrongdoer are sometimes spoken of as penal in their nature, but in such cases it has been pointed out that neither the liability imposed nor the remedy given is strictly penal. * * * Thus a statute giving to a tenant, ousted without notice, double the yearly value of the premises against the landlord, has been held to be 'not like a penal law, where a punishment is imposed for a crime', but 'rather as a remedial than a penal law,' because 'the act indeed does give a penalty, but it is to the party grieved.' * * * The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redresssed is a wrong to the public or a wrong to the individual * * *."

The view of the Supreme Court in respect of the nature of this statutory claim is indicated in the following passage from its opinion in Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 583, 62 S.Ct. 1216, 1222, 86 L.Ed. 1682: "Perplexing as petitioner's problem may have been, the difficulty does not warrant shifting the burden to the employee. The wages were specified for him by the statute, and he was no more at fault than the employer. The liquidated damages for failure to pay the minimum wages under sections 6(a) and 7(a) [29 U.S.C.A. §§ 206(a), 207(a)] are compensation, not a penalty or punishment by the Government. Cf. Huntington v. Attrill, 146 U.S. 657, 667, 668, 674, 681, 13 S.Ct. 224, 227, 228, 230, 233, 36 L.Ed. 1123; Cox v. Lykes Brothers, 237 N.Y. 376, 143 N.E. 226. The retention of a workman's pay may well result in damages too obscure and difficult of proof for estimate other than by liquidated damages [citing cases]."

These expressions have been characterized by one court as dicta, see Southern Package Corp. v. Walton, Miss., 18 So.2d 458. We think the expressions are not dicta. They were thought necessary to the decision of a point there made by the employer that he had been denied due process.[1] We hold that in respect of the re-

---

[1] The Overnight Motor Transp. Co. case had been decided some eighteen months prior to the trial court's decision in the present suit, but was apparently not con-

covery of amounts in addition to overtime the applicable period of limitations is the same as that for the recovery of overtime, here three years. § 338 Cal.Code Civ.Proc.

3. Appellee's status and operations do not differ materially from those of the driller concerned in Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83. It is admitted that the producing wells drilled under contract were, upon completion, connected up with major pipe lines. The oil from these wells went largely to California refineries, and part of the refined product passed into interstate commerce. The trial court properly held, on the authority of the Warren-Bradshaw decision, supra, that appellee was engaged "in the production of goods for commerce" within the meaning of § 7(a) of the Act, 29 U.S.C.A. § 207(a). It was of opinion that work performed by the employees in the drilling of producing wells was within the coverage of the Act, but it thought that services performed in the drilling of "dry holes"—that is, nonproducing or unsuccessful wells—was not. It held similarly as regards work done in the employer's "yard."

In § 3(j) of the Act, 29 U.S.C.A. § 203 (j), the term "produced" is broadly defined, and it is there provided that "an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

■ In the course of drilling in oil producing areas, such as we are concerned with here, it is inevitable that some of the holes will turn out to be dry.[2] Nevertheless the entire drilling process is essential to the exploitation and delineation of the field. The object of all drilling operations of this nature is production, for obviously no well would be drilled if it were known in advance that the well would be a dry hole. Waste of energy and the frustration of well-intended effort are not peculiar to the oil business.

Work done in the drilling of a dry hole in a producing field is at least as necessary and as closely related to the process of production as are the services of a building maintenance employee in a building occupied as a factory, Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; or of a cook in a logging camp, Consolidated Timber Co. v. Womack, 9 Cir., 132 F.2d 101; or of a night watchman in a manufacturing plant during whose hours of service the plant is not operated, Walton v. Southern Package Corp., 320 U.S. 540, 64 S.Ct. 320.

Adoption of the trial court's view would render the Act virtually impossible of administration. Overtime compensation is payable in the course of employment and as the work proceeds. Rigopoulos v. Kervan, 2 Cir., 140 F.2d 506, 151 A.L.R. 1126. Under the test applied below, if the hole drilled eventually becomes productive the employee's work is covered; otherwise it is not. Neither the employer nor the employee could know until after the event perhaps until long after the relationship is severed, whether the Act applied to the relationship.

We conclude that under the circumstances of this case the work done in the drilling of nonproductive as well as productive wells is within the coverage of the Act.

■ The record does not disclose the nature of the "yard" work thought by the court to be beyond the scope of the legislation. It appears to have formed a very minor part of the claims considered, and little attention was given the subject in briefs and argument. If the work in the yard had substantial relationship to the drilling operations or was essential to their being carried on we see no reason why it is without the coverage, cf. Kirschbaum v. Walling, supra; Reynolds v. Salt River Valley Water Users Ass'n, 9 Cir., 143 F.2d 863. We commend the matter to the further consideration of the trial court in the light of this opinion.

On another trial, upon proper proof, the statutory right to attorney fees should be given recognition.

Reversed and remanded for further proceedings in harmony with this opinion.

---

sidered. Perhaps it was not called to the court's attention.

[2] Consult generally on the subject here discussed, Clapp, The Occurrence of Petroleum, Day's Handbook, pp. 1–75; Petroleum Facts and Figures, 7th Ed., 1941, pp. 80–81; Leven, Done in Oil (1941), pp. 352–459; U'Ren, Petroleum Production Engineering, 2d Ed., pp. 36, 73, 77, 82.