774

## LASSITER et al. v. GUY F. ATKINSON CO.

## GUY F. ATKINSON CO. v. LASSITER et al.

### No. 11312.

Circuit Court of Appeals, Ninth Circuit.

May 28, 1947.

Oscar Zabel and Frederick Paul, both of Seattle, Wash., for appellants, Lassiter, et al.

J. Charles Dennis and Frank Pellegrini, both of Seattle, Wash., for appellant Guy F. Atkinson Co.

Before GARRECHT, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This is an action by or on behalf of employees of Guy F. Atkinson Company (herein sometimes called the contractor) to recover overtime pay and damages under the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219. Both sides appeal.

1. The appeal of the claimants (plaintiffs) will be considered first. One of their major contentions relates to an alleged circumvention of the Act. The contention is bottomed on a change of base salary rates made at the beginning of the performance of the second of two contracts which the Atkinson Company had with the government. These were cost-plus contracts for the construction of military bases in Alaska, the claimants here being employed at the Seattle office of the contractor. Under both contracts the salaries and hours of work of the employees were set by the government. Prior to November 1, 1943, claimants were paid a weekly base wage for a 44-hour work week with straight time for all hours worked over 44, plus time and one-half for holidays worked, double time for the seventh consecutive day of work, and leave time.[1] When operations were commenced under the second contract (November 1, 1943) the government directed the inauguration of new salary schedules. The basic work week was at that time fixed at 40 hours instead of 44 as hitherto.

As a typical example of the asserted circumvention the claimants cite the case of an employee named Lois Read, who, prior to the date specified above, was paid $35 for a regular work week of 44 hours, or at the rate of $.79545 per hour. Under the new schedule inaugurated by the government's contracting officer she was reclassified and her base salary fixed at $30.43 for a 40-hour week.[2] The basic hourly rate was $.7608. If this rate be multiplied by 40 (the number of hours in the new regular work week), and time and a half allowed for 4 additional hours as overtime, the computation yields $35. This is the same wage as was formerly received for the 44-hour week without any payment for overtime. Claimants' argument is that the schedule, arrived at as indicated in note 2 above, amounts merely to a bookkeeping manipulation whereby the employer continued to work its employees the same number of hours without any increased wage bill.

Claimants do not, however, tell the whole story. Under the new schedule Miss Read and all other employees in her class were paid time and one-half for all time worked in excess of 8 hours in any one day as well as for all time in excess of 40 hours in any week. The daily overtime was paid even though the employee worked only 40 hours or less during the week.[3] An exhibit per-

---

[1] It was originally contended by the Atkinson Company that the claimants were without the scope of the Act, as not being engaged in commerce or the production of goods for commerce. This contention has been abandoned on the appeal.

[2] The War Department directive to the contractor stated: "The new 40-hour basic salary shall be calculated as follows: (1) the present approved salaries shall be multiplied by the fraction 40-46 in all cases where the resulting basic salary would equal $53.31 or less."

[3] As to Miss Read it was stipulated as follows: "Lois Read was employed on the 25th day of February, 1943, and was continuously employed by the defendant until the 28th day of July, 1945; that she was employed as a clerk at $25 per week for a 44-hour week; that on the 25th of April, 1943, her salary was raised from $25 to $30 per week for a 44-hour week; that from the 20th of May, 1943, to the 1st of November, 1943, her salary was $35 per week for a 44-hour week.

"That beginning with the 1st of November, she was reclassified and from the 1st of November, 1943 to the 19th of November, 1944, her base salary was

taining to Miss Read shows how this schedule functioned. In the week covered by the exhibit she worked only 24 regular hours for which she was paid at the regular rate of $.7608. For the same week she was paid 12 hours overtime at the rate of $1.1412 for hours worked in excess of 8 on certain days. Her total earnings for that week were $31.86 although she worked but 36 hours altogether. It is undisputed that daily overtime was a matter of not uncommon occurrence in the case of all employees. That the salary rates established were not artificial or fictitious sufficiently appears from the pay records of other employees in the same class as the employee selected by the claimants as typical. On the issue of circumvention the court found that "the defendant employed the plaintiffs and claimants herein on a weekly salary and not on an hourly basis; that defendant was at all times honest and aboveboard in its dealing with, and treatment of the plaintiffs and claimants; that there is no evidence of any purpose or design on the part of the defendant in its dealings with the parties plaintiff or claimant, to circumvent or avoid any of the applicable provisions of the Fair Labor Standards Act."

We are constrained to accept this finding. The Act does not prohibit an agreement whereby the employees continue to receive the same wages as before, provided the rate of pay equals or exceeds the required minimum. Walling v. A. H. Belo Corporation, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716; Walling v. Halliburton Oil Well Cementing Co., 67 S.Ct. 1056. Cf. Walling v. Youngerman Hardwood Co., 325 U.S. 419, 424, 425, 65 S.Ct. 1242, 89 L.Ed. 1705. True the employment arrangements here were not negotiated agreements, but they nevertheless amounted to contracts since the employees were advised of them and continued to work without complaint. Shepler v. Crucible Fuel Co., 3 Cir., 140 F.2d 371, Williams v. Jacksonville Terminal Co., 315 U.S. 386, 398, 62 S.Ct. 659, 86 L.Ed. 914.

A number of the claimants worked for more than two years prior to the commencement of the suit. As to the portions of the causes of action accruing prior to two years the court held recovery barred by a Washington statute, § 165 of Rem.Rev.Stat., providing: "An action for relief not hereinbefore provided for shall be commenced within two years after the cause of action shall have accrued." It is conceded that the appropriate limitation is to be sought for in the state law, Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743, 162 A.L.R. 719; Culver v. Bell & Loffland, 9 Cir., 146 F.2d 29; but claimants assert that the applicable provision is not § 165 but subdivision 3 of § 159, Rem.Rev.Stat., which prescribes a three-year limitation in "an action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument."

We think otherwise. The Supreme Court of Washington has interpreted subdivision 3 of § 159 as covering contractual liabilities only and as not including a liability created by statute. Cannon v. Miller, 22 Wash.2d 227, 155 P.2d 500, 157 A.L.R. 530. That decision involved a claim arising under the Fair Labor Standards Act. The court held that the two-year "catch-all" statute, that is to say, § 165 quoted above, governs such actions.[4] The federal courts have uniformly recognized as binding rules of decision the construction placed by the highest court of the state upon local statutes of limitation. Bauserman v. Blunt, 147 U.S. 647, 13 S.Ct. 466, 37 L.Ed. 313; Metcalf v. City of Water-

$30.43 for a 40-hour week; that from the 19th of November, 1944, to the 28th of July, 1945, she received a base salary of $32 for 40-hour week; that prior to the 1st of November, 1943, she was paid straight time for all time worked by her in excess of 40 hours in one week; that subsequent to the 1st of November, 1943, she was paid time and one-half for all overtime worked by her in excess of eight hours in any one day, or in excess of 40 hours in any one week; that she was paid time and one-half for overtime holidays' work; that she received the same leave time as other employees, which accrued at the rate of two days each month for time not worked; that she received that leave pay."

4 There appears to be no provision in the Washington limitation laws expressly directed to liabilities created by statute.

town, 153 U.S. 671, 14 S.Ct. 947, 38 L.Ed. 861; Dibble v. Bellingham Bay Land Company, 163 U.S. 63, 16 S.Ct. 939, 41 L.Ed. 72. Claimants argue, however, that the nature of the liability created by the Fair Labor Standards Act presents a federal question, and they insist that the liability is contractual in nature since in legal contemplation the Act became part of the contract. This court has taken a different view, Culver v. Bell & Loffland, 9 Cir., 146 F.2d 29, where in a suit under the Act, arising in California, we applied a section of the California Code of Civil Procedure (§ 338) prescribing a three-year limitation in actions "upon a liability created by statute, other than a penalty or forfeiture."[5] We are not persuaded that the holding is wrong and are content to adhere to it. Compare McClaine v. Rankin, 197 U.S. 154, 25 S.Ct. 410, 49 L.Ed. 702, 3 Ann.Cas. 500. It is plain that in the absence of the Act the contractor was not liable for any additional payments. The added compensation recoverable does not rest on agreement or consent in the traditional sense, but results from a contract existing only in contemplation of law. The liability is quasi-contractual only. Cf. McClaine v. Rankin, supra.

■ A third and minor point remains on this branch of the appeal. As to two of the claimants, Richardson and Brandenburger, it was originally contended that they were not professional employees as the trial court held them to be. Consult Regulation 541.3, 29 U.S.C.A. Appendix. The contention that their services were not of a professional character has now been abandoned, and in respect of these claimants it is argued only that they were not paid a salary as provided in the regulations cited above, hence they are not to be considered as falling within the exemption prescribed. The trial court found the contrary, and a study of the evidence convinces us that the finding was not error. The point has insufficient merit to warrant detailed discussion.

2. We turn to the appeal of the contractor. Its appeal originally attacked the awards in favor of 36 of the claimants but as to 20 of them the attack has been abandoned, leaving but 16 whose recoveries are now in dispute. The argument as to the 16 is that they were executive or administrative employees as defined in §§ 541.1 and 541.2 of the Regulations, hence exempt from coverage under § 13(a) of the Act, Title 29 U.S.C.A. § 213(a), which excludes executive, administrative and professional employees "as such terms are defined and delimited by regulations of the Administrator." The pertinent regulations are shown on the margin.[6]

---

[5] California had at that time a statute (§ 339, Code of Civil Procedure), providing a two-year limitation upon a contract obligation or liability not founded upon an instrument in writing.

[6] "§ 541.1 Executive. The term 'employee employed in a bona fide executive * * * capacity' in section 13(a) (1) of the Act shall mean any employee.

"(a) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and

"(b) who customarily and regularly directs the work of other employees therein, and

"(c) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and

"(d) who customarily and regularly exercises discretionary powers, and

"(e) who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodgings, or other facilities), and

"(f) whose hours of work of the same nature as that performed by nonexempt employees do not exceed 20 per cent of the number of hours, worked in the work week by the non-exempt employees under his direction; Provided, that this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment."

"§ 541.2 Administrative. The term 'employee employed in a bona fide * * * administrative * * * capacity' in section 13(a) (1) of the Act shall mean any employee

"(a) who is compensated for his services on a salary or fee basis at a rate of not less than 200 per month (ex-

To facilitate the work on its Alaska contracts with the United States the contractor set up an office at Seattle. As already noted, the claimants in this suit were employees of that office. The Seattle office was divided into four main departments, namely, engineering; administrative, accounting and payroll; personnel; and purchasing. Each department was headed by a manager who was responsible to the contractor's representative at Seattle. The claimants whose awards are contested were labor recruiters, assistants to the personnel manager, assistants in the several sections of the purchasing department (which included a contract termination section and an "expediting" section), and also certain employees in the administrative department. The contention of the contractor is that the evidence does not warrant the recoveries as to these classes of employees.

■ The burden of proving that an employee is within the exemptive provision is on the employer, Walling v. Reid, 8 Cir., 139 F.2d 323. As to each of the claimants in question the trial court found that: "In the performance of their respective duties, [they] were under the supervision of and did not act independently of higher executive or administrative authority, and the court finds, that they and each of them, were not employed in executive or administrative capacities as defined by the said Act and Regulations." It is to be noted that this finding is not couched in the language of either regulation, but it is clear from a reading of the findings in conjunction with the opinion of the trial court that none of the claimants was regarded as exercising any important measure of discretion or independent judgment in the performance of his duties.

■ Except as to the labor recruiters, we are satisfied that the finding should not be disturbed. Whether the claimants fall one side or the other of the line presents close and perplexing questions, and with the exception noted we see no clear error in the court's determination on this point. As to the labor recruiters, however, we are persuaded that the undisputed showing brings them within the conjunctive definition of the term executive employees.

The nature of the duties performed by the labor recruiters was agreed to by stipulation. In effect, they were in sole charge of an independent and physically separated branch establishment of the company. Their work was very important and it called for the habitual exercise of discretion and independent judgment. They traveled to the large centers of population throughout the country where they acted as employment agents for the contractor. In these cities they set up headquarters in the offices either of the War Manpower Commission or the United States Employment Office. If a recruiter required assistants in the form of clerks or stenographers to aid him in his work he hired them and bound his company to pay their salary, first having advised the personnel office in Seattle of the need for additional help and obtaining the necessary authority. He exercised his own discretion as to clerical assistants so hired, and necessarily he directed them in their work.

The business of the recruiter was to obtain workers for the job being done by his company in Alaska. He was kept advised at all times by the Seattle office as to the type or classification of employees needed on the project and the numbers required. He reported to Seattle daily on the number and classification of employees hired by

---

clusive of board, lodging, or other facilities), and

"(b) (1) who regularly and directly assists an employee employed in a bona fide executive or administrative capacity (as such terms are defined in the regulations in this part), where such assistance is nonmanual in nature and requires the exercise of discretion and independent judgment; or

"(2) who performs under only general supervision, responsible nonmanual office or field work, directly related to management policies or general business operations, along specialized or technical lines requiring special training, experience, or knowledge, and which requires the exercise of discretion and independent judgment; or

"(3) whose work involves the execution under only general supervision of special nonmanual assignments and tasks directly related to management policies or general business operations involving the exercise of discretion and independent judgment." 29 U.S.C.A.Appendix.

him, and exercised discretion in hiring individuals within the assigned classifications and quotas. It was his duty to evaluate the ability or qualification of an applicant from all available evidence. He signed with the workers recruited a memorandum of employment, although the final contract of employment was not executed by him. The memorandum bound the company to pay the individual's salary, transportation, subsistence, and quarters to Seattle, where he was further processed, but if the individual was rejected for employment the company was bound to pay his wages, expenses, and return transportation to the point of original hire. As an example of the importance of the recruiter's exercise of good judgment, a worker employed at Chicago, who was rejected at Seattle, cost the company $350.-00.

The recruiter supervised in detail the dispatch of new employees to Seattle, arranged for the sending of their tools and equipment necessary to be taken in the performance of their work, and paid the cost thereof. He placed newspaper advertising and radio publicity, exercising judgment and discretion in the selection of the medium, and himself prepared the advertising copy. He opened accounts with Western Union, with railroads for transportation, with advertising agencies for the placing of publicity, and with doctors for the physical examination of prospective employees. In emergencies he had authority to expend whatever sums or take whatever steps were necessary in order to complete his mission. And his pay was in excess of that specified in the regulations.

Five recruiters are involved, namely, those covered by the second, third, fifth, thirty-fourth, and thirty-seventh causes of action. For such period as the claimants named in these causes of action were employed as labor recruiters we hold that they are excluded by § 13(a) of the Act and regulations thereunder.

On the appeal of the claimants the judgment below is affirmed. On the appeal of the Atkinson Company it is affirmed as to all claimants except the recruiters. In respect of the awards made to them the judgment is reversed.