See also 19 F.R.D. 532; 158 F.Supp. 160.

**BANANA DISTRIBUTORS, Incorporated; Percival B. Elbaum; Edith Elbaum; Joan S. Elbaum and Jerome D. Elbaum, minors, by Percival B. Elbaum, their guardian ad litem; and The Inland Corporation, Plaintiffs,**

v.

**UNITED FRUIT COMPANY; Fruit Dispatch Company; and John A. Werner, Defendants.**

United States District Court
S. D. New York.

Dec. 5, 1957.

**154**

Smith, Mathews, Bell & Solomon, New York City, for plaintiffs. Blackwell Smith and Ernest Leff, New York City, Arnold, Fortas & Porter and Thurman Arnold, Washington, D. C., of counsel.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for defendants. Theodore Kiendl, Ralph M. Carson, Porter R. Chandler, Edwin J. Jacob, David G. Gill, David L. Farley, Jr., New York City, of counsel.

LEVET, District Judge.

This is an action for treble damages and injunctive relief under the antitrust laws. The application of the pertinent statute of limitations is immediately involved. The complaint was filed on September 3, 1953. It alleges a combination and conspiracy in violation of the federal antitrust laws commencing sometime in 1946; the complaint also alleges various overt acts constituting an illegal use of defendants' monopoly power committed in 1947 and 1949 and continuously thereafter up to the date of suit.

When the complaint was filed on September 3, 1953, there was no federal statute of limitations governing treble damage actions under the antitrust laws. The uniform four-year statute of limitations now incorporated under the Clayton Act (15 U.S.C.A. § 15b) was not enacted until 1955.

Counsel for plaintiffs and counsel for defendants agree that the causes of action herein, if any, arose in Connecticut. Furthermore, under these conditions, the parties agree that this court in determining the appropriate period of limitations must first look to the law of the forum, to wit, New York.

However, Section 13 of the New York Civil Practice Act (sometimes called the "borrowing provision") provides:

"*Limitation where cause of action arises outside of the state.* Where a cause of action arises outside of this state, an action cannot be brought in a court of this state to enforce such cause of action after the expiration of the time limited by the laws either of this state or of the state or country where the cause of action arose, * * *"

The "borrowing statute" (Section 13 of the New York Civil Practice Act) has been consistently applied when the cause of action arose in another jurisdiction. Seaboard Terminals Corporation v. Standard Oil Co. of New Jersey, D.C.S. D.N.Y., 1938, 24 F.Supp. 1018, affirmed, 2 Cir., 1939, 104 F.2d 659; Electric Theater Co. v. Twentieth Century-Fox Film Corp., D.C.W.D.Mo.1953, 113 F. Supp. 937; cf. Cope v. Anderson, 1947, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602. There is no claim that any of the plaintiffs come within the saving clause in favor of New York residents.

Hence, we are forced to consider the relevant provisions of the State of Connecticut. These (Title 63, Chapter 414, General Statutes of Connecticut, 1949 Revision) are as follows:

"Sec. 8316. *Action founded upon a tort.* No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

"Sec. 8325. *Suit for forfeiture on penal statute limited to one year.* No suit for any forfeiture upon any penal statute shall be brought but within one year next after the commission of the offense."

"Sec. 8330. *Defendant's absence from the state to be excluded, when.* In computing the time limited in the several cases aforesaid, the time during which the party, against whom there may be any such cause of action, shall be without the state, shall be excluded from the computation."

The matter at issue in this preliminary trial is whether the defendants Fruit Dispatch Company and United Fruit Company were "without the state" during the years 1947–1953.

The basic rule has been stated as follows:

"It is well established that in determining the period of limitations applicable to actions at law, the federal courts are governed by local statutes as interpreted by the highest courts of the respective States. Bell v. Morrison, 1 Pet. 351, 26 U.S. 351, 359, 360, 363, 7 L.Ed. 174; Graham v. Englemann, D.C., 263 F. 166, 168. See, also, Palmer v. Texas, 212 U.S. 118, 131, 29 S.Ct. 230, 53 L.Ed. 435." Van Dyke v. Parker, 9 Cir., 1936, 83 F.2d 35, 37. See Campbell v. City of Haverhill, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280.

The same court (9th Circuit) approved of the same rule with respect to any exceptions raising a bar to the statute notwithstanding the fact that the legislation or judicial construction thereof is different from that prevailing in other jurisdictions (83 F.2d at page 38). See also Wood & Selick, Inc., v. Compagnie Generale Transatlantique, 2 Cir., 1930, 43 F.2d 941, 942.

Consequently, the question of whether defendants were "without the state" must be determined by the laws of Connecticut and by reference to Connecticut decisions. We are bound by the decisions of the State of Connecticut on the construction and interpretation to be given those statutes. Leonia Amusement Corp. v. Loew's Inc., D.C.S.D.N.Y.1953, 117 F.Supp. 747, 751–752; Dibble v. Bellingham Bay Land Co., 1896, 163 U.S. 63, 73, 16 S.Ct. 939, 41 L.Ed. 72; Bauserman v. Blunt, 1893, 147 U.S. 647, 652, 13 S.Ct. 466, 37 L.Ed. 316.

In the absence of a decision by the highest court of the state, the federal court must follow the decisions of the intermediate state courts, even though the rule may appear to be unsound or undesirable, unless it is convinced by other

persuasive data that the highest court of the state would do otherwise, but it is not free to apply a different rule merely because it may think that the highest court of the state might announce a different rule in the future. 35 C.J.S. Federal Courts § 174, p. 1257.

The Connecticut statute as to tolling— that is, Section 8330—apparently was first used in 1821, although theretofore such words had been used in a statute concerning book debts enacted in 1785. The early statute provided that "in computing the time limited in the several cases aforesaid, the time during which the party, against whom there may be any such cause of action, shall be without this state, shall be excluded from the computation." Stat. p. 406, § 8 (Ed.1838). See Sage v. Hawley, 1844, 16 Conn. 106, 114.

■ If analogous decisions clearly show the law of the state, the federal court must determine the case in accord with those decisions. Marsh v. Buck, 1940, 313 U.S. 406, 61 S.Ct. 969, 85 L.Ed. 1426. If the law cannot be ascertained from state decisions, only then should the federal court examine the decisions of other states on the subject or it may follow the rule established by federal decisions. *But the federal court need not engage in mere speculation as to how the state court would decide the question.* New England Mut. Life Ins. Co. v. Mitchell, 4 Cir., 1941, 118 F.2d 414, 420, certiorari denied 314 U.S. 629, 62 S.Ct. 60, 86 L.Ed. 505.

Defendants assert, however, that in determining the principles applicable to this question, the Connecticut court would, and, therefore, this court must, utilize the so-called federal approach and apply the *test of amenability to service under the "transacting business" test of the Clayton Act.* Here the defendants point to:

(1) Bertha Building Corporation v. National Theatres Corporation, 2 Cir., 248 F.2d 833, 835. In this case the Second Circuit stated:

"* * * decision as to whether these suits are barred by the stat-

ute depends upon whether National could have been sued by these plaintiffs in California before the California statute of limitations had run, and so comes down to a question of *venue* in respect to each of such supposititious suits." (Emphasis supplied.)

This language from the Bertha case would not appear to be pertinent since we are not concerned with a question of venue but, rather, with a question of amenability to process. Furthermore, on petition for rehearing (Bertha Building Corporation v. National Theatres Corporation, 2 Cir., 248 F.2d 833, the Court of Appeals in a per curiam opinion expressly noted that it was not passing upon the question of whether New York law determined tolling under the New York statute (New York Civil Practice Act, § 19).

(2) Seaboard Terminals Corporation v. Standard Oil Co. of New Jersey, D.C.S. D.N.Y.1938, 24 F.Supp. 1018, affirmed, 2 Cir., 1939, 104 F.2d 659:

In the Seaboard case, one of the questions before Judge Patterson was whether the Maryland statute of limitations, Code 1951, art. 57, § 5, had run against the defendant, Socony-Vacuum Oil Company, or whether the Maryland statute had been tolled due to its absence from the state. The defendant Socony argued that while it was not subject to suit generally in Maryland, it was subject to an action there for treble damages under the Clayton Act. Judge Patterson in rejecting this contention stated:

"* * * The only activity of this defendant in Maryland shown on these papers, however, is the statement in the amended complaint that it has bought, sold, transported and caused to be transported gasoline and other petroleum products from and to Maryland, Pennsylvania and other states. In my opinion this falls short of alleging that it 'transacted business' in Maryland to a sufficient extent to be subject to civil action there under the Clayton Act." (24 F.Supp. at page 1020.)

Neither the lower court nor the Court of Appeals in the Seaboard case was squarely faced with the problem of determining whether to read the "transacting business" test of the Clayton Act into the Maryland tolling provision since even under Section 12 of the Clayton Act, defendant Socony had not "transacted business" in Maryland.

The Seaboard case, therefore, would not appear to support defendants' position which would in effect require this court to incorporate or absorb federal decisions dealing with venue under Section 12 of the Clayton Act into an interpretation of the Connecticut tolling provision.

The statute concerned is Title 15 U.S.C.A. § 22, which is as follows:

"§ 22. District in which to sue corporation

"Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

The legislative history of the "transacting business" amendment to the Clayton Act was discussed by the Supreme Court in United States v. National City Lines, Inc., 334 U.S. 573, 581–587, 68 S.Ct. 1169, 92 L.Ed. 1584. At page 583 of 334 U.S., at page 1175 of 68 S.Ct., the court said:

"The basic aim of the advocates of change was to give the plaintiff the right to bring suit and have it tried in the district where the defendant had committed violations of the Act and inflicted the forbidden injuries. At first they were not much concerned with the exact formulation of the language to accomplish this, several formulas being proposed from time to time. But they were convinced that restricting the choice of *venue* to districts in which the defendant 'resides or is found' was not adequate to assure that the suit could be brought where the cause of action arose, and therefore insisted on change in order to assure that result." (Emphasis supplied.)

In the legislative history of this section there is evidence indicating that its purpose related to venue and not to service. In discussing the purposes of the amendment Senator Chilton stated:

"*  *  * That provides where the suit may be brought. It does not give any further jurisdiction or right. If, as a matter of fact, the suit could not be brought before that section was passed, it would not allow the suit to be brought afterwards. It only speaks of the service of the process and where the suit may be brought. It does not refer to the jurisdiction of the court. The other language of the section provides that process may be served in another district. That is already the law. If the bill be passed, if the court has jurisdiction of the case, suits may be brought in one district and the other defendants may be served in another district." (See 51 Congressional Record, 63rd Congress, 2nd Session, 1914, p. 16,049.)

The problem restated, however, is whether in this instance, the Connecticut courts (1) would be presumed to consider the federal statute and (2) to follow the interpretation of such statute as decided in the federal decisions.

The difficulty here is that unless a state court is given jurisdiction over antitrust cases, no Connecticut courts would have occasion to determine a specific question of application of Section 8330 to such an action. Thus, we are asked by the defendants to suppose that this court is the Connecticut Court of Errors passing on the application of the Connecticut tolling statute to a cause of action on which the Connecticut courts have no jurisdictional basis to entertain. "In essence, the question is whether the federal courts should or should not be

required to make and document that kind of hypothetical estimate; it can never be more than that for the obvious reason that state courts do not have jurisdiction to hear antitrust complaints." See The Statute of Limitations in Antitrust Litigation," Carl H. Fulda and Howard C. Klemme, 16 Ohio State Law Journal, 233, 238. Also see Disparities in Time Limitations on Federal Causes of Action, 49 Yale Law Journal, 738; Limitations and the Federal Courts, William Wirt Blume and B. J. George, Jr., 49 Michigan Law Review, 937.

The first clause of Section 22 deals with *venue* in which a corporation may be served; the second clause deals with service of process on the corporation. The two are not identical. *Venue* may be (a) in the district wherein the corporation is an "inhabitant"; (b) wherein it may be found; or (c) wherein it transacts business. *Process* may be served upon the corporation (a) "in the district of which it is an inhabitant" or (b) "wherever it may be found."

By the same token, the decisions interpreting Section 22 in reference to "transacting business" relate primarily to *venue*, not *process*.

Jeffrey-Nichols Motor Co. v. Hupp Motor Car Corporation, 1 Cir., 1931, 46 F.2d 623:

Here plaintiff sued defendant, a Virginia corporation, in Massachusetts following service in Massachusetts. The court wrote:

"The defendant appeared by counsel for the sole purpose of objecting to the jurisdiction, and filed a motion to dismiss the action on the ground that the defendant was not a resident nor did it transact business in Massachusetts. * * *" (At page 624.)

The court further stated:

"Prior to the enactment of October 15, 1914, c. 323, § 12, 38 Stat. 736 (15 U.S.C.A. § 22), a person or corporation violating the antitrust laws could only be sued in the district where resident, or where found. The provision of section 12 of the Clayton Act relieved 'the injured person from the necessity of resorting for the redress of wrongs committed by a nonresident corporation, to a district, however distant, in which it resides or may be "found"—often an insuperable obstacle—and enabling him to institute the suit in a district, frequently that of his own residence, in which the corporation in fact transacts business, and bring it before the court by the service of process in a district in which it resides or may be "found."' Eastman Kodak Co. v. Southern Photo Material Co., 273 U.S. 359, 373, 374, 47 S.Ct. 400, 403, 71 L.Ed. 684; General Inv. Co. v. Lake Shore & M. S. R. Co., 260 U.S. 261, 279, 43 S.Ct. 106, 67 L.Ed. 244." (At page 624.)

Katz Drug Co. v. W. A. Sheaffer Pen Co., D.C.W.D.Mo.1932, 6 F.Supp. 210:

Here Judge Reeves, apparently speaking of the above distinction, said:

"It does not follow that because it was transacting business in the district it could be regarded as present in the district or that 'it may be found' there. * * *" (At page 212.)

Adolph Meyer, Inc., v. Florists' Telegraph Delivery Ass'n, Inc., D.C.S.D.N.Y., 1936, 16 F.Supp. 783:

In this case Judge Knox wrote:

"The opinion of the Supreme Court in Eastman Kodak Company v. Southern Photo Material Company, 273 U.S. 359, at page 373, 47 S.Ct. 400, 403, 71 L.Ed. 684, very definitely points out that the 'transaction of business' by a foreign corporation within the confines of a particular judicial district is of wider significance than the 'doing of business' within such district so as to subject the corporation to the valid service of process therein. The quotation from 273 U.S. 359, at page 371, 47 S.Ct. 400, 402, 71 L.Ed. 684, of the aforementioned opinion, and contained on page 13 of defendant's brief, has to do with the service

of process within a district in which a defendant 'does business' and is not an interpretation of what constitutes the transaction of business under the venue provisions of the Clayton Act (38 Stat. 730)." (At page 783.)

Lechler Laboratories, Inc., v. Duart Mfg. Co., Inc., D.C.S.D.N.Y.1940, 35 F. Supp. 839:

Judge Mandelbaum said in this case:

"It is settled that the quantum of business which must be transacted by a corporation in a district to place the venue of an action under the anti-trust acts is less than the 'doing business' which is necessary to sustain the service of process. Eastman Kodak Co. v. Southern Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 634; Hansen Packing Co. v. Armour & Co., D.C., 16 F.Supp. 784; Meyer, Inc. v. Florists' Telegraph Delivery Association, Inc., D.C., 16 F.Supp. 783; Haskell v. Aluminum Co. of America, D.C., 14 F.2d 864; United States v. Aluminum Co. of America, D.C., 20 F.Supp. 13; Sure-Fit Products Co. v. Fry Products Co., D.C., 23 F.Supp. 610; Deutsch v. Times Pub. Corporation, D.C., 33 F.Supp. 957. * * *" (At page 840.)

Abrams v. Bendix Home Appliances, Inc., D.C.S.D.N.Y.1951, 96 F.Supp. 3:

Judge Weinfeld very properly wrote:

"Section 12 of the Clayton Act is an enlargement of jurisdiction granted under Section 7 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 15, which restricted suits to the district in which the defendant 'resides or is found' and so controlled both the place of service of process and venue. United States v. Scophony Corporation of America, 333 U.S. 795, 804, 68 S.Ct. 855, 92 L.Ed. 1091. * * *

"As indicated in the Eastman [273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684] and Scophony cases, venue may be proper in a district, although the corporation may not be subject to

service of process there. It follows that the standard to be applied in determining whether a corporation 'transacts business' for the purposes of venue under Section 12 is more liberal than that used in deciding the validity of service. * * *" (At page 5.)

Similiter see:

Windsor Theatre Co. v. Loew's Inc., D.C.D.C.1948, 79 F.Supp. 871; United States v. E. I. Du Pont De Nemours & Co., D.C.N.D.Ill.1950, 87 F.Supp. 962; Austad v. United States Steel Corp., D.C. N.D.Cal.1956, 141 F.Supp. 437

There is, therefore, persuasive authority for the above distinctions between "venue" and "process." Consequently, application of the so-called "liberal federal approach" (which in essence deals with nothing more than vanue) to this problem of Connecticut interpretation of Section 8330 of the laws of that state is, in my opinion, erroneous.

It would be equally erroneous, in my opinion, to submit to the jury the question of whether defendants can be "found" in Connecticut within the meaning of Section 12 of the Clayton Act since there would appear to be no justification for incorporating or absorbing the federal statutory language into the Connecticut tolling provision. In any event, there seems to be no substantial distinction between the process test set forth in Section 12 of the Clayton Act, and the process test applied by the Connecticut courts. Thus, in Eastman Kodak Company of New York v. Southern Photo Materials Company, 1927, 273 U.S. 359, 47 S.Ct. 400, 402, the Supreme Court in discussing the original provision in Section 7 of the antitrust act which authorized suit "in the district in which the defendant 'resides or is found'" stated:

"* * * In Peoples Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 84, 86, 38 S.Ct. 233, 234, 62 L.Ed. 587 * * * decided in 1918, it was held that this provision, as applied to a corporation sued in a district in which it did not reside,

required that it 'be present in the district by its officers and .agents carrying on the business of the corporation,' this being the only way in which it could be said to be 'found' within the district; that to make it amenable to service of process in the district, the business must be of such nature and character as to warrant the inference that it had subjected itself to the local jurisdiction, and was by its duly authorized officers or agents present therein; and that advertising its goods in a state and sending its soliciting agents therein, did not amount to 'that doing of business' which subjected it to the local jurisdiction for the purpose of serving process upon it." (273 U.S. at page 371, 47 S.Ct. at page 402.)

Therefore, a charge embodying the process provision of Section 12 of the Clayton Act is not required.